### COONEY, ECKSTEIN & COMPANY *v.* SWEAT *et al.*

1. The act approved August 17, 1903 (Acts 1903, p. 92), regulating the sale of goods, wares, and merchandise in bulk, has no application to a sale of substantially all the lumber manufactured by one who operates a sawmill at which trees are manufactured into lumber.
2. An oral motion in the nature of a general demurrer may be made at any time before verdict.

Submitted June 7,—Decided November 20, 1909.

Attachment. Before Judge Parker. Wayne superior court. November 25, 1908.

*R. D. Meader,* for plaintiffs.    *F. H. Harris,* for defendants.

EVANS, P. J. Cooney, Eckstein & Company sued out an attachment in the superior court of Wayne county against Sweat, alleging, that he was indebted to them in the sum of $219.17 for money advanced; that for some time prior thereto he was the lessee of a sawmill at which trees were manufactured into lumber and sold to various purchasers; and that a few days prior to filing the suit he had sold to the Waynesville Trading Company substantially all the lumber he had on hand, consisting of the following items: "36 pieces of yellow pine lumber, 8 x 16, 25 feet long, 750 pieces of yellow pine lumber, 2 x 5, 9 feet long, and 7,000 to 8,000 feet of yellow pine lumber, same being 5 x 8 car-sills, making about 80 pieces, same being at said Waynesville and at said sawmill or on cars loaded there for shipment." It was further alleged that the notice referred to in the act of 1903 (Georgia Laws, 1903, p. 92) had not been given. The attachment was issued, and the lumber levied upon. The Waynesville Trading Company filed a claim thereto; and to the declaration in attachment Sweat filed certain special demurrers and also a plea. Subsequently the judge of the superior court dismissed the attachment, on the ground that the act of 1903 does not apply to a transaction of the kind set forth in the petition. The correctness of this judgment is the sole question presented by the writ of error.

1. The act of 1903 is applicable to a sale of "any stock of goods, wares, and merchandise in bulk." The object of the legislature in passing the statute was the protection of persons who had extended credit to merchants on the faith of apparent prosperity indicated by a stock of goods, wares, and merchandise, which would not be sold in bulk to one person, but which would be sold out gradually, and replenished from time to time. When merchants sell their entire stock of goods to one person without notice of any kind to their creditors, a fraud is frequently perpetrated upon the creditors; and it was the intention of the legislature to afford a remedy to the victims of these fraudulent sales. The act is in derogation of the common law, and of a person's right to alienate his property without restriction, and is therefore to be strictly construed. *Jaques & Tinsley Co.* v. *Carstarphen Warehouse Co.,* 131 *Ga.* 1 (62 S. E. 82); *Sampson* v. *Brandon Grocery Co.,* 127 *Ga.* 454 (56 S. E.

488) ; *Carstarphen Warehouse Co.* v. *Fried,* 124 *Ga.* 544 (52 S. E. 598).

In the construction of statutes of this kind it is always well to consider the evil intended to be reached. That evil, says Vann, J., in his dissenting opinion, in the case of Wright v. Hart, 182 N. Y. 330 (75 N. E. 404, 2 L. R. A. (N. S.) 338), "is the tendency and practice of merchants who are heavily in debt to make secret sales of their merchandise in bulk for the purpose of defrauding creditors. Common observation shows that when a dealer has reached a point in his business career where he can not go on, owing to the claims of creditors, the temptation is strong and the practice common of making fraudulent sales." The act of 1903 bears internal evidence of a legislative intent to confine its operation to merchants or dealers in merchandise. The first section thereof, in prescribing the preliminary acts necessary for the validity of a sale authorized by the act and the duty of the vendor, declares that "It shall further be the duty of said vendor to give the vendee a statement of his assets and liabilities, and *the cost price of the merchandise to be sold,* said cost price to be arrived at by an inventory taken at the time by the seller and purchaser." And the same section makes it the duty of the purchaser in giving notice of the sale to the vendor's creditors to also send "a copy of the statement of the assets and liabilities as furnished him by the vendor." The word "merchandise" is, however, not to be taken in such a restricted sense as to exclude the usual and customary accessories of a mercantile or trading establishment when a sale in bulk is made of the whole. Thus, bar-fixtures, safes, desks, cash-registers, cigar-cases, pool-tables, refrigerators, and the like, used in connection with a business to which they are appropriate, in facilitating the operation of such business and the sale of the goods connected therewith, have been held to be included in the sale of the business, within the meaning of the sales-in-bulk act. *Parham* v. *Potts-Thompson Liquor Co.,* 127 *Ga.* 303 (56 S. E. 460).

Though in many of the States statutes of a similar character have been enacted within the last ten years, there are to be found only a few cases defining the meaning of the phrase "goods, wares, and merchandise." In the State of Washington it was held in Plass v. Morgan, 36 Wash. 160 (78 Pac. 784), that a sale of all goods, wares, and merchandise in a restaurant was a sale within the contempla-

tion of the statute; but later in the same State it was held, in Everett Produce Co. v. Smith, 40 Wash. 566 (82 Pac. 905, 2 L. R. A. (N. S.) 331, 111 Am. St. R. 979), that a sale of the horses, wagons, and harness comprising the stock in a livery-stable was not a sale of a stock of goods, wares, or merchandise, within the meaning of the statute.   In Massachusetts it was held that biscuits and crackers put up in boxes or barrels by a wholesale biscuit company for the wholesale market were within a statute regulating the sale of goods, wares, or merchandise in bulk.   Hart v. Brierly, 189 Mass. 598 (76 N. E. 286).   And in a later case it was there held that the sale-in-bulk statute was intended to prevent a trader from disposing of his stock of merchandise in a manner outside of his usual course of business.   Gallus v. Elmer, 193 Mass. 106 (78 N. E. 772, 8 Am. & Eng. Ann. Cas. 1067).

A person operating a sawmill at which trees are manufactured into lumber and then sold is not within the purview of the act, though he sells substantially all the lumber he has on hand at a particular time to one person.

2.   It is insisted that the judgment is erroneous for the further reason that the defendant could not move to dismiss the attachment after he had filed a plea and entered a general appearance.   An oral motion to dismiss in the nature of a general demurrer on the ground that no cause of action is set forth may be made any time before verdict.   *Judgment affirmed.   All the Justices concur.*