# CHARLESTON.

## Lewis, Hubbard & Co. v. James Loughran.

Submitted November 25, 1919. Decided December 5, 1919.

Fraudulent Conveyances—*Sale of Lunch Wagon Not Within Bulk Sales Act.*

The sale of a lunch wagon, together with the furniture, fixtures, appliances and supplies kept on hand for its operation, is not void as to creditors for failure to comply with the provisions of the "Bulk Sales Law," § 3a of ch. 74 of the Code. Such a business does not come within the purview of that Act.

Error to Circuit Court, Kanawha County.

Suit by Lewis, Hubbard & Co., against James Loughran, with intervention by C. A. Reilley. Judgment for plaintiff was reversed in the circuit court on a writ of error and the property discharged from the lien of an attachment, and plaintiff brings error.

*Affirmed.*

*Payne, Minor & Bouchelle,* for plaintiff in error.
*Horan & Pettigrew,* for defendant in error.

Ritz, Judge:

Prior to the institution of this suit the defendant owned and operated a lunch wagon in the City of Charleston, and became indebted to the plaintiff for supplies used in the conduct of that business. On the 27th of July, 1918, he sold his lunch wagon, including the furniture and appliances used by him in the conduct of the business, as well as certain supplies then on hand, to one C. A. Reilley, for the sum of one thousand dollars, which was paid in cash on the day of sale, and Reilley took from the defendant a bill of sale. Subsequently, to-wit, on the 23d of August, 1918, the plaintiff brought this suit in the Intermediate Court of Kanawha County for the purpose of recovering the amount due it by the defendant, and in said suit sued out an attachment which was levied upon the lunch wagon, the furniture, fixtures, and appliances therein, as well as the supplies then on hand in the same. Reilley thereupon filed his petition claim-

ing to be the owner of the property under the sale made to him as aforesaid, and asked that the same be discharged from the levy of the attachment. This was resisted by the plaintiff upon the ground that the parties had not complied with the provisions of § 3a of ch. 74, Barnes' Code, known as the "Bulk Sales Law," and that the sale was therefore void and of no effect so far as the plaintiff, a creditor of Loughran, is concerned. No question is raised in this case about the bona fides of the sale to Reilley, and it is admitted that no attempt was made by Reilley or the defendant to comply with the requirements of the Bulk Sales Law, the sole question presented being whether that law applies to this transaction. The Intermediate Court held that the sale was void as to the plaintiff, and ordered the property sold in satisfaction of its debt. Upon a writ of error to the circuit court of Kanawha county this judgment was reversed, and the property discharged from the lien of the attachment, and from this judgment plaintiff prosecutes this writ of error.

The provisions of the Bulk Sales Law, so far as they are material to the controversy here, are: "The sale in bulk of any part or the whole of a stock of merchandise otherwise than in the ordinary course of trade and in the regular and usual prosecution of the seller's business, shall be fraudulent and void as against the creditors of the seller," etc. In construing this statute we must bear in mind that it is a restraint placed upon the right to alien property, and must not be extended to include matters not embraced within its terms. It will be noticed that the Act provides that the sale of any part or the whole of a stock of merchandise otherwise than in the ordinary course of trade shall be deemed void as against creditors, unless compliance is had with the further provisions of the Act. Do these terms include within the purview of the legislation such a business as was carried on by the defendant? It is apparent from the agreed statement of facts that the articles sold in this case, so far as they were of any substantial value, consisted of the lunch wagon itself and the dishes, cooking utensils, and other furniture used in connection with its operation. Can it be said that the defendant had these articles on hand for sale in the ordinary course of trade, or in the regular and usual prosecu-

tion of his business; or that he was engaged in such a business as that he had any stock of goods on hand at all for sale in the ordinary course thereof, or in the usual and regular prosecution thereof? His business was to furnish to those desiring it subsistence ready for consumption. He purchased supplies in small quantities, and with the appliances and apparatus that he had converted them into an edible condition, and then served them to his customers. We do not think the statute referred to has any application to such a business as that conducted by the defendant. By its very terms it is made to apply to the sale of a stock of goods kept for sale in the ordinary course of the business being conducted. Defendant did not have any stock of goods, wares or merchandise on hand for sale, nor did the sale in this case include what can by any fair implication be termed as stock of goods. The items of real value were not items that he had for sale in the ordinary course of his business. They were articles necessary to the conduct of his business; they were the means with which he carried it on.

Our Bulk Sales Law is in identical language with the statute of the State of Massachusetts upon this question, and was evidently taken from the law of that state. The Supreme Judicial Court of Massachusetts has had occasion to construe the act in the case of *Gallus v. Elmer,* 193 Mass. 106, 8 Am. & Eng. Ann. Cases, 1067. In that case a party who had been conducting a butcher and grocery business sold his fixtures, tools and utensils, together with his stock of goods and merchandise, without complying with the requirements of the Act as to notice. One of his creditors levied upon the property contending that the sale was void because of this non-compliance. The purchaser replevied from the officer the tools, fixtures and appliances, claiming that these were not included in the term "stock of merchandise" used in the Act, and that the sale, so far as these articles were concerned, was valid. The court in passing upon the question said: "The phrase 'stock of merchandise', as used in the statute, properly and naturally describes articles which the seller keeps for sale in the usual course of his business. It does not naturally describe fixtures. It would hardly be within the usual course of business for a storekeeper at any time to sell his fixtures, and it is not to be presumed that the

Legislature intended to prohibit the sale of a fixture, unless such intent is clearly expressed. The natural reading of the statute makes it applicable, as has been said, only to the articles which in the ordinary course of his business the seller keeps for sale, and that must be taken to be its legal meaning."

The State of Georgia has a bulk sales law very much like the one in force in this state, and in the case of *Parham & Company* v. *Potts-Thompson Liquor Co.,* 127 Ga. 303, 56 S. E. 460, it was held that a sale made by a saloon keeper of his stock of goods, in which was included his bar fixtures, safes, desks and other appliances, was void as to creditors, and that creditors might enforce their debts against not only the stock of goods, but against the fixtures. This holding would seem to be contrary to the holding of the Massachusetts court. We do not consider it, however, as entirely applicable to the case we are considering, for the reason that it appeared in that case that by far the larger part of the subject of the sale was the stock of goods, wares and merchandise, and the court might very well conclude that where the sale was made in bulk of the whole business as one item it would not undertake to separate it into two different parts, one of which would be affected by the act, and one not.

In the case of *Cooney, Eckstein & Co.* v. *Sweat,* 133 Ga. 511, 66 S. E. 257, 25 L. R. A. (N. S.) 758, it was held that a sale of substantially all of the lumber manufactured by one operating a sawmill did not come within the terms of the act, the court coming to the conclusion that a person operating a sawmill, where trees were manufactured into lumber and then sold, is not within the purview of the law, though he sells substantially all of his manufactured product at one time to one person.

In the case of *Off* v. *Morehead,* 235 Ill. 40, 85 N. E. 264, 20 L. R. A. (N. S.) 167, the Supreme Court of Illinois held an act similar to our Bulk Sales Law unconstitutional, but in the discussion declared that such an act had no application to a sale by a hotel keeper of his entire business, or the property therein. Of course that was not a point of decision in that case, and is only pertinent as showing what that court would likely have held had the act been held to be constitutional.

The State of Michigan has an act much broader than our

own in that it renders void as to creditors not only the sale of
the whole or any part of the stock of merchandise, but the fix-
tures and appliances used in connection with the business, ex-
cept when such sale is made in the ordinary course of such
business. In the case of *Bowen* v. *Quigley,* 165 Mich. 337, 130
N. W. 690, 34 L. R. A. (N. S.) 218, the Michigan Supreme
Court in construing that act in connection with the sale of a
coal business held: "The horses, wagons, harness, screens,
shovels, baskets, chutes, desk, and safe used in transacting a
coal business are not fixtures, within the meaning of a bulk
sales law forbidding the sale of a stock of merchandise 'and
the fixtures pertaining to the conduct of said business,' other-
wise than in the ordinary course of trade, without giving notice
to creditors."

The Supreme Court of Washington has had occasion to con-
sider an act similar to ours on more than one occasion. In the
case of *Plass* v. *Morgan,* 36 Wash. 160, it was held that the act
applied to a sale of all the goods, wares and merchandise of a
person engaged in conducting a boarding house and restaurant.
The act in that case is not in the same language as our act, but
we do not think the difference in the form of expression is sub-
stantial. The court, however, in its opinion lays emphasis on
the fact that the word "any" is used in connection with the
phrase, stock of merchandise, and seems to base its decision
largely upon that fact. We do not believe that the use of this
word in connection with the other phrase adds anything to it, or
makes it mean anything different from what it otherwise would
have meant, and if we were disposed to follow the decision in
that case we would be constrained to hold that the act applied
to the sale under consideration here. The reasoning of the
court, however, we do not consider satisfactory. We think the
opinion gives undue weight to the use of the word "any" used
to express the legislative intent. The same court, in the case
of *Albrecht* v. *Edward Cudihee,* 37 Wash. 206, held that the
act did not apply to the sale of a cash register used in a saloon
business which was sold together with the entire stock of goods,
wares and merchandise. It is hard to distinguish this case
from the former case of *Plass* v. *Morgan, supra.* It is difficult
to understand why the furniture used by a hotel keeper should

be covered by the act, while the fixtures used by a saloon keeper are without its terms. The latter case does not overrule the former expressly, nor is the former decision even referred to in the opinion of the Court. Undoubtedly the two cases are in irreconcilable conflict. Again the Washington Supreme Court, in the case of *Everett Produce Co.* v. *Smith*, 40 Wash. 566, 5 Am. & Eng. Ann. Cases, 798, held that the act did not apply to the horses, wagons and harness comprising the stock in a livery stable.

It is evident from this review of the authorities that there is an irreconcilable conflict. What was the purpose of the Legislature in passing this Act? Evidently to preserve for those engaged in the wholesale mercantile business, as security for the payment of their debts for merchandise, the merchandise itself, unless the same was sold in the ordinary course of trade. The language "stock of merchandise, or any part thereof," was never intended to include the furniture, fixtures and appliances necessarily employed in the conduct of the business, for the very good reason that they are not sold by such merchants in the ordinary course of their business at all, and by its terms the act only applies to such merchandise as is sold in the ordinary and usual conduct of the business. One running a lunch wagon, as was the defendant in this case, cannot be said to keep any stock of merchandise at all for sale. His business is not buying and selling merchandise within the meaning of this Act, and we are persuaded that it was never the legislative intent that it should apply to a business of this character.

It, therefore, follows that the judgment complained of will be affirmed.

*Affirmed.*