26414. HARRIS *v.* KILGORE.

DECIDED OCTOBER 8, 1937.

*M. Davis,* for plaintiff. *T. T. Molnar,* for defendant.

MacIntyre, J. "It shall be the duty of every person who shall bargain for or purchase any stock of goods, wares, or merchandise in bulk, for cash or credit, before paying or delivering to the vendor any part of the purchase-price therefor, to demand and receive from the vendor thereof, and if the vendor is a corporation, then from the managing officer or agent thereof, a written statement under oath of the names and addresses of all the creditors of said vendor, together with the amount of indebtedness due or owing by said vendor to each of such creditors; and it shall be the duty of such vendor to furnish such statement. It shall further be the duty of said vendor to give to the vendee a statement of his assets and liabilities and the cost price of the merchandise to be sold, said cost price to be arrived at by an inventory taken at the time by the seller and purchaser." Acts 1903, p. 92; Code, § 28-203. "Thereupon it shall be the duty of the purchaser, at least five days before the completion of the purchase or the payment therefor, to notify, personally or by registered mail, each of said creditors, of the said proposed sale, the price to be paid therefor, and the terms and conditions thereof, and to give to each of said creditors a copy of the statement of the assets and liabilities as furnished him by the vendor." § 28-204. The act of 1903, thus codified, as applied to. a sale of "any stock of goods, wares, or merchandise in bulk," is in derogation of the common law and of a person's right to alienate his property without restriction and therefore is to be strictly construed. "The act of 1903 bears internal evidence of a legislative intent to confine its operation to merchants or dealers in merchandise. The first section thereof, in prescribing the preliminary acts necessary for the validity of a sale authorized by the act and the duty of the vendor, declares that 'It shall further be the duty of said vendor to give the vendee a statement of his assets and liabilities, and *the cost price of the merchandise to be sold,* said cost price to be arrived at by an inventory taken at the time by the seller and purchaser.' " *Cooney v. Sweat,* 133 *Ga.* 511 (66 S. E. 257, 25 L. R. A. (N. S.) 758). The articles sold in the instant case were: "1 Singer patching machine No. G. 97891, 102; 1 Landis finisher shoe machine, model 51 R. Serial No. 19192; 1 Landis shoe stitcher No. 25729; 1 electric motor No. 1047339, 1 h. p.; 1 dust collector No. 3796 attached to the said Landis finisher; 1 oak-color roll-top desk, used;

2 home shoe lasts; 1 wooden bench, green, no name, appears to be made by a local carpenter; 1 cane-bottom chair, used; approx. 5 doz. assorted sizes rubber heels used to repair shoes and for sale; approx. 5 doz. leather half-soles used to repair shoes; approx. 3 pounds of assorted sizes shoe nails; approx. 3 doz. assorted shoe and slipper laces which was offered for sale to the public; approx. 2 doz. bottles of Checker white shoe polish offered to the general public for sale; an assortment of hammers, awls, etc., which is used as equipments for the shoe-repairing trade."

Everything sold was in the nature of equipment for the repair of shoes, unless it can be said the 36 shoe laces and the 24 bottles of white shoe polish offered to the public for sale changed the character as an entity of what was sold from that of equipment for the repair of shoes to that of a stock of "goods, wares, or merchandise in bulk." Were not these shoe laces and bottles of white shoe polish rather subordinate, accessory, and incident to the repair equipment? We think so. We do not think that all of this repair equipment was subordinate to the shoe laces and the shoe polish. The laces and the polish did not lead, but followed the principal (the repair equipment) which distinguishes this case from *Parham* v. *Potts-Thompson Liquor Co.*, 127 *Ga.* 303 (7) (56 S. E. 460). There, the bar fixtures, safes, desks, etc., were subordinate and accessory to the stock of liquor sold. To say that the shoe polish and shoe laces determined the character of the sale as an entity and made the sale one of a "stock of goods, wares or merchandise in bulk," rather than to say that the sale was in character and in fact (according to the intention of the parties) a sale of shoe-repairing equipment, would be saying that the tail wagged the dog, rather than that the dog wagged the tail. Considering the articles sold as an entity, we think that the sale did not violate the bulk-sales law cited above. See also *Martin* v. *Taylor*, 24 *Ga. App.* 598 (101 S. E. 690); *Walters* v. *Hagan*, 53 *Ga. App.* 547, 551 (3) (186 S. E. 563). The court properly dismissed the action on demurrer.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*