PIGGLY-WIGGLY GEORGIA COMPANY *v.* MAY INVESTING CORPORATION INC., *et vice versa.*

478

Nos. 13078, 13087. November 29, 1939.
Rehearing denied December 15, 1939.

*Ragland, Kurz & Layton* and *Hooper & Hooper,* for plaintiff in error.

*Herbert J. Haas, George B. Tidwell, Bertram S. Boley,* and *Joseph F. Haas,* contra.

GRICE, Justice. ■ The plaintiff by cross-bill of exceptions complains that the court overruled its motion to strike the special appearance by which the defendant attacked the validity of the service, on the ground that "said plea is defective in that it is a dilatory plea which is not sworn to personally by the defendant, as is required under the laws of this State." We will not stop to discuss whether the plaintiff properly characterizes as a "dilatory plea" the defendant's special appearance attacking the validity of the service. Whatever its proper name, the pleading was that of a corporation, and was verified positively by one who swore that he was "agent and attorney" of the defendant. Since the corporation itself can not be sworn, such pleadings filed in its behalf which the law requires to be verified may be sworn to by an agent of the corporation. 13 Am. Jur. § 1163. We see no reason why this rule should not apply in the instant case. Nothing contrary was decided in *Colquitt* v. *Mercer,* 44 *Ga.* 432.

■ A special appearance urging lack of service and lack of jurisdiction is not waived by the filing of a demurrer or plea to the merits under the express protestation that the service is not waived. *Bell* v. *New Orleans & Northeastern R. Co.,* 2 *Ga. App.* 812 (59 S. E. 102). See *High* v. *Padrosa,* 119 *Ga.* 648 (46 S. E. 859); *Medical College of Georgia* v. *Rushing,* 124 *Ga.* 239 (3) (52 S. E. 333). Where there has been no service of a suit, or waiver thereof, the necessity of service is not dispensed with by the mere fact that the defendant may in some way learn of the filing of the suit. *Car-*

*roll* v. *Muller,* 31 *Ga. App.* 209 (120 S. E. 548).. See *Davis.* v. *Comer,* 108 *Ga.* 117, 119 (33 S. E. 852, 75 Am. St. R. 33). Piggly-Wiggly Georgia Company, having filed its special appearance under the express provision that it did not thereby waive lack of jurisdiction, and afterwards having filed a demurrer and an answer subject to its special appearance, did not by participating in the further trial of the case, after an adverse ruling on its special appearance, thereby waive its attack upon the service and the jurisdiction of the court for lack of service.

■ Should the motion of the defendant to dismiss the action have been granted? Is section 22-1104 of the Code of 1933 violative of the due-process clauses of the State and Federal constitutions? The act of 1845 (Ga. L. 1845, p. 40) provided in effect that any process against any corporation might be executed by leaving the same at the place of transacting the usual and ordinary public business of said corporation, "if any such place of business there shall be within the jurisdiction of the court in which said suit may or shall be commenced; and if any corporation shall not have any such place for the transaction of its usual and ordinary public business, then by leaving the same at its last notorious place of transacting its said business, and publishing a copy of said subpœna, attachment, or other original process, in one of the public gazettes of this State for the space of three months; and any copy of the newspaper containing said publication shall be received in all the courts of this State as sufficient evidence of such service." This act, it will be observed, did not limit the corporation to those chartered by this State, and further provided that if it had no such place of business, then the process should be left at its last notorious place of business, and publication thereof in one of the public gazettes of this State for the space of three months. Thereafter came the act approved March 4, 1856 (Ga. L. 1855-6, pp. 224, 225), which, without any reference to the act of 1845, provided that "Where any body corporate created or hereafter to be created by the laws of this State, shall have no public *place of doing business,* or shall have no individuals in office upon whom service of writs may be perfected within the knowledge of any party complainant, either in law or in equity, then and in that event, the said complainant may make an affidavit that the corporation has no public place of doing business or has no individual

in within office upon whom service of writs may be perfected [within] the knowledge of the said complainant; and such affidavit being filed in the clerk's office of the court to which the said writ may be made returnable, the clerk of the said court shall advertise a citation to the said defendants to be and appear at the said court to answer the complaint, once a week for three weeks prior to the court to which the said complaint may be returnable, in some newspaper located in the county in which the suit is brought; if no paper is published therein, then in one nearest thereto; and such advertisement shall be deemed and held a service upon such corporation for all purposes either in law or equity, any law, custom, or usage to the contrary notwithstanding." The substance of this act forms section 22-1104 of the Code of 1933, except that the codifiers made the method there outlined apply to "any corporation," instead of to "any body corporate created or hereafter to be created by the laws of this State." While the section has been before the courts of this State a number of times, this is apparently the first time its constitutionality has been called in question. It is attacked on the ground that it violates the due-process clauses of the State and Federal constitutions, and the fourteenth amendment to the constitution of the United States.

If the basic contention of the plaintiff in error be sound, it matters not whether the procedure adopted by it to attack the sufficiency of the service be classed as a plea to the jurisdiction, because the fatal infirmity, if it exists at all, appears on the face of the record, and therefore even a motion will reach it. Code, § 81-501. The special appearance included a motion to dismiss the case on the ground that there had been no service, the purported service having been according to a statute which violated the due-process clauses of the State and Federal constitutions. We are therefore confronted with the inquiry, whether Code, § 22-1104, is unconstitutional for the reason asserted.

At the time of the approval of the act of March 4, 1856 (Ga. L. 1855-6, pp. 224, 225, Code, § 22-1104), the phrase "due process of law" was not found in the constitution of this State, although its genesis, to wit, "by the law of the land," was in magna charta. Its first appearance in the constitution of Georgia was in the year 1861. The words were contained in the fifth amendment to the constitu-

tion of the United States, but none of the first ten amendments to that instrument affected the power of the States in relation to their own people. In 1866 it appeared as a part of the fourteenth amendment to the Federal constitution, which was declared by a proclamation of the Secretary of State to have been ratified in June, 1868. In 1856 there were not many private corporations in this State, and these in the main were railroads, canals, mining, manufacturing, and banking companies. There were few trading corporations, which now form the great majority of our corporate bodies. During the war between the States the courts of the United States ceased to function within the State of Georgia. "The Confederate States Court for Georgia," vol. 9, Georgia Historical Quarterly. During the same period the maxim *leges silent inter arma* found general expression as to the State courts, although there were some exceptions. See *Darracott* v. *Penington, 34 Ga.* 388, and the statement of Judge Iverson L. Harris, on page 392. But two cases were brought to this court during the November term, 1865. In an address before the fourteenth annual session of the Georgia Bar Association by Henry R. Goetchius, Esq., dealing with "Litigation in Georgia during the Reconstruction Period" (Georgia Bar Association Reports for the year 1897, pp. 66 et seq.), he observed that in that period most of the questions which reached the court were political in character, concerning the subject of slaves and slave contracts, involving the nature of the obligations wherein the slave property was a consideration, and, lastly, the status of the slave as a freedman. The foregoing may afford an explanation in part for the absence, during so many years, of an attack on the constitutionality of this act. Apparently the first reported case wherein an act was challenged in the courts of this State, on the ground that its provisions violated the due-process clause of the Georgia constitution, is *Johnson* v. *Americus, 46 Ga.* 80, decided at the July term, 1872. The due-process clause of the fourteenth amendment to the Federal constitution first came before the U. S. Supreme Court the same year in the Slaughter-House Cases, 16 Wallace, 36. The courts generally have refrained from attempting any comprehensive definition of the term "due process of law," but all the authorities agree that one of the requirements of due process is that notice is essential to the validity of a judgment in personam. McGehee on Due Process, 73 et seq.

Pennoyer *v.* Neff, 95 U. S. 714 (24 L. ed. 565), is regarded as the leading case on the subject of the character of notice required. It was there said: "The State, having within her territory property of a non-resident, may hold and appropriate it to satisfy the claims of her citizens against him; and her tribunals may inquire into his obligations to the extent necessary to control the disposition of that property. If he has no property in the State, there is nothing upon which her tribunal can adjudicate." In the opinion the following language was used: "If, without personal service, judgments in personam, obtained ex parte against non-residents and absent parties, upon mere publication of process, which, in the great majority of cases, would never be seen by the parties interested, could be upheld and enforced, they would be the constant instruments of fraud and oppression." The ruling in that case was a pronouncement of the effect on a non-resident of a judgment against him based on service by publication. The court did not have before it an absent defendant. The authority of that case as a precedent therefore is limited in this respect, and is not controlling in the instant case. Black's Law of Judicial Precedent, 37-49. But in Cooper *v.* Reynolds, 10 Wallace, 308 (19 L. ed. 931), the court was dealing with an absent defendant, although that fact was not prominently brought out. It was pointed out by Mr. Justice Field in the Pennoyer case, supra, that in Cooper *v.* Reynolds it was essential to the disposition of the case to declare the effect of a personal action against an absent party who was without the jurisdiction of the court, not served with the process, or voluntarily submitting himself to the jurisdiction of the tribunal. Judged by the standard laid down in Pennoyer *v.* Neff and in Cooper *v.* Reynolds, and following the reasons on which those decisions were based, we find it difficult to escape the conclusion that the statute now before us was lacking in due process. In 4 Thompson on Corporations (3d ed.), 3117, is the following statement: "Generally the statutes providing for service by publication apply to foreign corporations or non-residents. But statutes may be, and have been enacted, providing for service by publication on domestic corporations under certain circumstances. And it is. now well settled that statutes providing for such service are constitutional. However, their validity is generally held to depend on the fact that the defendant, after due diligence, can not be

found in the State." It is to be noted that the distinguished author above quoted uses the words "under certain circumstances," and that his general statement to the effect that it is now well settled that statutes providing for such service are constitutional is qualified by his further statement that "their validity is generally held to depend on the fact that the defendant, after due diligence, can not be found in the State." We have found some difficulty, after an extended and careful search, aided by the briefs of able and industrious counsel, to endorse the statement quoted above, even with the qualifications inserted by the author. On the particular point at issue, the authorities do not appear to be numerous; and so far as the proposition being well settled, we believe the authorities to be divided on the subject.

In Bardwell v. Collins, 44 Minn. 97 (46 N. W. 315, 9 L. R. A. 152, 20 Am. St. R. 547), the ruling is that in actions in personam, of a strictly judicial character and proceeding according to the course of the common law, service of the summons, by publication in a newspaper, upon residents who are personally within the State and can be found therein is not due process of law. In that case the court summarized the legislation of the State of Minnesota regarding substituted service by publication, and reached the conclusion that a judgment in personam may be rendered, after service by publication, against a resident defendant who is within the State but could not be found therein. That decision did not deal with a defendant corporation. A similar ruling was made by the Supreme Court of Minnesota in McNamara v. Casserly, 61 Minn. 335 (63 N. W. 880). The Georgia statute, as pointed out in this opinion, merely authorizes service by publication when the defendant corporation has no public place for doing business, or no individual in office upon whom service may be perfected, *within the knowledge of the plaintiff*. In Town of Hinckley v. Kettle River Co., 70 Minn. 105 (72 N. W. 835), the court dealt with a statute of Minnesota providing for service by publication on domestic corporations which had no officer in the State upon whom legal service could be made, and held that statute valid and not violative of the due-process clause of the constitution. That statute, however, required a return of the sheriff to the effect that no officer could be found upon whom service could be made, before the order should issue providing for service by publication. As heretofore

pointed out, the Georgia statute has no such provision. In Nelson v. Chicago &c. R. Co., 225 Ill. 197 (80 N. E. 109, 8 L. R. A. (N. S.) 1186), the Supreme Court of Illinois ruled that the legislature could provide for substituted service of process by publication and mail upon a resident of the State, in an action for tort, who can not be personally served in the county where the suit is brought. The statute there, however, fixed the venue. The Georgia statute now before us does not. The Illinois statute requires, as a condition precedent, that the officer make return upon the process that he can not in the county find the president or other officer or agent upon whom to effect service; further providing that in addition to notifying an incorporated company by publication, it should be notified by mail in like manner as otherwise provided in the laws of that State. Again it is to be noted that the Georgia statute does not contain a like provision as to the necessity of a return of non est inventus by the sheriff; nor does it require notification by mail.

The Supreme Court of North Carolina, in Bernhardt v. Brown, 118 N. C. 700 (24 S. E. 527, 36 L. R. A. 402), limited the effect of a statute of North Carolina, the language of which seemed to purport to authorize a judgment in personam as to a resident defendant, based on service by publication, to judgments in rem. The Supreme Court of California, in McKendrick v. Western Zinc Mining Co., 165 Cal. 24 (130 Pac. 865), ruled that as to a domestic corporation having no person on whom service can be made, or which has departed from the State and can not be found within the State after due diligence, or conceals itself to avoid service, service may be made by publication. But the California statute provides that before this is done an affidavit shall be filed, showing that the defendant has departed from the State, conceals itself to avoid service, etc. As herein pointed out, the only affidavit required under the Georgia statute is that *within the knowledge of the plaintiff* the corporation has no public place for doing business, or has no individual in office upon whom service may be perfected. The case of Columbia Basin Land Co. v. Peter C. Chalmers Company, 126 Wash. 307 (218 Pac. 217), presented the question of the validity of the service of process in a tax-foreclosure proceeding. Whether that decision dealt with a judgment in rem or in personam is not clear. The court in construing Rem. Comp. Stat. § 227 (evidently a codification of the law of the State of Washington),

held that the fact that the corporation has no officer in the State on whom process can be served must appear. The provision of the Washington statute is not set forth, but the opinion states that a summons requiring the appearance within sixty days after service was issued, placed in the hands of the sheriff, and returned by him with an entry thereon of "not found." The court reversed the judgment of the trial court for entering a decree for the plaintiff, on the ground that the record showed a lack of jurisdiction to enter the judgment. Once again we remark that the Georgia statute has no requirement as to the fact of the absence, except the statement that there is no place for doing business, or no officer in the State upon whom service can be made, *within the knowledge of the plaintiff.*

In State ex rel. Woods-Young Co. *v.* Tedder, 103 Fla. 1083 (138 So. 643), the court dealt with a Florida statute providing that corporations shall designate an office or place of business or domicile for the service of process within the State, that such designated place of business shall be kept open during certain hours on each day, and that during such hours it shall have at such office one or more officers or agents on whom process may be served; that if the corporation shall fail to keep an officer or agent at the office designated upon whom process may be served, and the return of the sheriff shows that "service of process was attempted at such office, and that such officer was unable to make said service, either by reason of the fact that said office was not kept open as therein provided, or that there was no officer or agent at such office upon whom service of process could be had, then under such circumstances and in such event the clerk of the court . . shall make an order against such corporation, requiring it to appear in said cause upon a rule day to be fixed by the order," and that same shall be published for four successive weeks in a newspaper in the county, etc. The Supreme Court of Florida called attention to the fact that the statute there dealt with required a return of the sheriff; that service of process was attempted, but could not be made, for the reason that the corporation's office was not kept open, or that there was no such officer at such office upon whom service of process could be made; and that the return of the sheriff showed that he was unable to serve the summons, for the reason that said office was not kept open, and that there was no

agent or officer at such designated office on whom service could be made; and that the order of publication recited these facts. Upon that record it was held that the statute of Florida providing for service of process on domestic corporations by publication was not invalid as denying due process of law. The opinion stated that the basis of the rule in some States by statute providing for service by publication on domestic corporations under certain circumstances rests upon the fact that the defendant, after due diligence, can not be found in the jurisdiction. Another Florida case, Clearwater Mercantile Co. *v.* Roberts &c. Co., 51 Fla. 176 (40 So. 436, 4 L. R. A. (N. S.) 117, 120 Am. St. R. 153), involved the legality of service of process upon a domestic corporation by publication, under a statute similar to that referred to above. It was held that "service by publication upon a domestic corporation which has failed to provide officers or agents upon whom other service may be had constitutes due process of law." Under that statute, however, there was a requirement that before the order of service by publication should be entered, the officer (sheriff) should make a return of his inability to serve the same, with his reasons therefor. The Georgia statute has no such prerequisite for the order for service by publication; nor has our attention been called to any law in Georgia which, as did the Florida statute, requires an office of a domestic corporation to be kept open at a designated place during certain hours on every day, Sundays and holidays excepted, and to have thereat during said hours an officer or agent upon whom service could be perfected.

In Ward Lumber Co. *v.* Henderson-White Mfg. Co., 107 Va. 626 (59 S. E. 476, 17 L. R. A. (N. S.) 324), the Virginia statute provided that process against corporations created by the laws of that State or some other State may be served on certain named officers, etc., in any case, if there be not in the county or corporation wherein the case is commenced any other person on whom service can be had, and "if there be no such agent in the county or corporation wherein the case is commenced, and affidavit of that fact, and if there is no person in said county aforesaid, publication of a copy of the process or notice once a week for four successive weeks in a newspaper printed in this State shall be a sufficient service of such process or notice." The Virginia decision seems to sustain the contention as to the constitutionality of the Georgia

statute now under attack, unless it may be distinguished on the ground that the fact of absence is the basis of the Virginia ruling, whereas in Georgia the only requirement is that, so far as the knowledge of the plaintiff exists, there is no absence.

None of the decisions referred to, unless it be in the Virginia case, is authority for the contention that the act now under attack meets the requirements of the due-process clause. There are certain instances in which a domestic corporation may be sued in a county other than the one in which its principal office is located. Code, § 22-1102. In a case falling under that section, it would be possible, if the act here assailed be valid, that a corporation chartered by the superior court of Rabun County, in the extreme northeastern part of the State, bordering on North Carolina, having its principal office and place of business in that county, maintaining there a public place of business, and having therein officers or agents upon whom service of process could be had, might be sued in Seminole County, in the extreme southwestern part of the State, bordering on Florida, some three hundred or more miles distant from Rabun County, if it "shall have no public place for doing business, or shall have no individual in office upon whom service of writs or process may be perfected, *within the knowledge of any party plaintiff*," provided only that the plaintiff make an affidavit that there is no such public place for doing business, or no individual in office upon whom service may be perfected, within the knowledge of said plaintiff; then a citation, according to this act, would be published in Seminole County, and on this a judgment in personam be rendered against the corporation. It is not even a requirement that as a matter of fact the corporation shall have no public place for doing business, or that it have no individual in office upon whom service may be perfected, but the act makes it possible for a binding judgment to be rendered on the kind of so-called notice named in this Code section, provided an affidavit be filed by the plaintiff that there is none within his knowledge. This is not, according to the "law of the land," due process of law; is not notice reasonably calculated to inform the defendant of the pending suit. We appreciate the force of the argument that the plaintiff, who may have a just claim against the corporation chartered in this State, and who has practically "fled the realm," ought to have some remedy, and we are not holding

that under these circumstances the General Assembly could not legally provide for a service other than personal service, which would meet the requirement of the due-process clause of the State and Federal constitutions; but we do hold that in the passage of the act approved March 4, 1856 (Code, § 22-1104), the legislature has not done so. Vide, *Nashville &c. R.* v. *McMahon,* 70 *Ga.* 585.

In the case of *Jefferson Fire Ins. Co.* v. *Brackin,* 140 *Ga.* 637 (79 S. E. 467), this court had before it section 2563 of the Code of 1910 (§ 56-601 of the Code of 1933), which provides in substance that suits upon any demand against any insurance company having agencies or more than one place for doing business in this State may be brought in a county where an agent or place of doing business of the company was located at the time the cause of action accrued, or the contract was made out of which said cause of action arose, although the company may have no agent or place of doing business in such county at the time the action is instituted. This court held that the provision of § 2564 of the Code of 1910 (§§ 56-602, 56-604 of the Code of 1933), which provides that in an action of the character referred to above service might be perfected upon the insurance company by leaving a copy of the petition or writ where the agency or place of doing business was located in the county at the time the cause of action accrued or the contract was made out of which the same arose, was unconstitutional because violative of the due-process clause of both the State and the Federal constitutions. This court said: "One of the essential elements of 'due process of law,' to which every one is entitled before he can be lawfully deprived of his property is notice of the procedure against him. This notice must not be dependent upon chance, and must at least be such as with reasonable probability will apprise him of the pendency of the proceeding." Such a pronouncement was in harmony with like statements of the rule to be found generally in text-books and in decisions where similar points were under discussion. 12 C. J. § 1006; 16 C. J. S. § 618. It is not sufficient that the defendant by chance receive notice of the pendency of the action against him. McGehee on Due Process, 82. Nor will it suffice that as a matter of grace he was given sufficient notice. The act itself must provide such notice as with reasonable probability will apprise the defendant of the pendency of the proceeding. *Shippen Brothers Lumber Co.* v. *Elliott,* 134

*Ga.* 699 (68 S. E. 509) ; Roller *v.* Holly, 176 U. S. 398, 409 (20 Sup. Ct. 410, 44 L. ed. 520) ; Security Trust &c. Co. *v.* Lexington, 203 U. S. 323, 333 (27 Sup. Ct. 87, 51 L. ed. 204) ; Central of Georgia Ry. Co. *v.* Wright, 207 U. S. 127, 138 (28 Sup. Ct. 47, 52 L. ed. 134) ; L. & N. R. Co. *v.* Central Stock Yards Co., 212 U. S. 132, 144 (29 Sup. Ct. 246, 53 L. ed. 441) ; Coe *v.* Armour Fertilizer Works, 237 U. S. 413 (35 Sup. Ct. 625, 59 L. ed. 1027). While the record shows that the judge passed an order purporting to determine that service had been perfected, the statute neither required nor provided for such determination; and therefore the order was passed as a matter of grace, and not because of any provision of law. We must therefore conclude that the Georgia statute, as herein pointed out, is in conflict with the .due-process clause of the constitution of this State and of the fourteenth amendment to the constitution of the United States, and that the action should have been dismissed.

*Judgment reversed on the main bill of exceptions; affirmed on the cross-bill. All the Justices concur.*