MIAMI BUTTERINE CO. *v.* FRANKEL *et al., et vice versa.*

Nos. 13198, 13223. APRIL 9, 1940.

*Walker & Kilbride* and *H. W. McLarty,* for plaintiff.

*A. S. Grove,* for defendants.

GRICE, Justice. ■ ■ The first question for consideration relates to the court's overruling of a motion by the plaintiff to strike the demurrers, plea of non est factum, answer and cross-action of the Miami Butterine Company, filed on February 17, 1937, on the ground that they were too late. The action was returnable to the November term, 1936, and the demurrers, general and special, plea, answer and cross-action were not filed at that term, but at the next succeeding term. "All demurrers and pleas shall be filed at the first term." Code, § 81-301. "In all cases demurrer, pleas, and answer shall be disposed of in the order named, and all demurrers and pleas shall be determined at the first term, unless continued by the court or by consent of parties." § 81-1002. There being no demurrer, plea of non est factum, answer, or cross-action filed at the first term, the determination of such pleadings could not be "continued" by the court beyond that term. The Code, § 110-401, declares: "In all cases, the judge at each term shall call the appearance docket upon some day previously fixed or on the last day of the term, and upon such call all cases in which the defendant has not filed a demurrer, plea, answer, or other defense shall be marked 'in default' on the docket." It is true that this court in construing this last quoted section has held: "Where the case has never been marked 'in default' on the docket, nor any order taken declaring the case to be 'in default,' it is error to dismiss an answer to the merits of the cause, filed at a term subsequent to the appearance term, because not filed in time." *Hall* v. *Tiedeman,* 141 *Ga.* 602 (81 S. E. 868) ; *McKenzie Co.* v. *Consolidated Lumber Co.,* 142 *Ga.* 375 (82 S. E. 1062). Compare *Glass* v. *Allen,* 141 *Ga.* 30 (80 S. E. 284) ; *Hodnett* v. *Stewart,* 131 *Ga.* 67 (2), 68 (61 S. E. 1124) ; *Gordon* v. *Hudson,* 120 *Ga.* 698 (48 S. E. 131) ; *Clifton* v. *Fiveash,* 122 *Ga.* 383 (50 S. E. 134) ; *Albany Pine Products Co.* v. *Hercules Mfg. Co.,* 123 *Ga.* 270 (51 S. E. 297). But those cases differ on their facts from the instant case, in that in the cases just referred to and quoted from no defense of any kind was filed at the appearance term, whereas in the case now before us the

Miami ·Butterine Company did file at the appearance ·term a plea. to· the jurisdiction and a traverse of·service; and such a plea must be construed as a form of defense, and comes within the· meaning of the words "or other defense" contained. in the Code section last quoted; so that while it was still pending and not passed on and stricken by the court, the judge could not, even if moved so to do by plaintiff or his counsel, mark the case as "in default" on the docket. Consequently those decisions· of this court which authorize a defendant to file an answer at the second term where the case has not been marked "in default" are not applicable ˙here. Nor is the ruling in *Davis* v. *South Carolina & Georgia Railroad Co.,* 107 *Ga.* 420 (33 S. E. 437), controlling in this case, since in the *Davis* case, a consent order was taken at the appearance term, setting the demurrer for a hearing at the trial term. And in *Gordon* v. *Hudson,* 120 *Ga.* 698 (48 S. E. 131), a "numerously-signed" petition was presented to the judge before the appearance term, requesting him not to hold court at that term, and giving the reasons for such request; whereupon the court passed an order allowing the defendants sixty days from the date of his order, in which to file answers, defenses, demurrers, and other pleas required by law to be filed at that term..

In *Chambless* v. *Livingston,* 123 *Ga.* 257 (51 S. E. 314), while the defendant filed at the appearance. term his general denial· of the plaintiff's allegations, which was demurred to on the ground that it did not answer the allegations of the petition paragraph by paragraph, and did not fully and distinctly set forth any defense, and the plaintiff prayed that said plea and answer be stricken, it appears from the record in that case that the plaintiff's demurrer and motion to strike was not called to the court's attention until after the defendant had filed his amendment to his answer at the second term, in which he met the plaintiff's demurrer. In *Quillian* v. *Johnson,* 122 *Ga.* 49 (3) (49 S. E. 801), this court held: "Notwithstanding a defendant may file a plea in abatement at the first term, he can not, by way of amendment to the plea at the trial term, set up new and distinct grounds why the action should abate, unless the plaintiff has so amended his pleadings as for the first time to make available the matters of defense sought to be urged by an amendment to the defendant's plea." In *Maddox* v. *Central of Georgia Ry. Co.,* 110 *Ga.* 301 (2) (34 S. E. 1036), nothing to the.

contrary was ruled. The plea to the merits was there allowed to be filed, not only after the defendant's plea in abatement had been overruled, but after the plaintiff had amended his suit by substituting "The Central of Georgia Railway Company" for "The Central Railroad and Banking Company of Georgia" wherever the latter appeared in the petition and process. In the instant case the answer filed at the second term of the court can not be considered in any sense as an amendment to the only plea filed at the first term, to wit, a plea to the jurisdiction and a traverse of service. Besides, contemporaneously with the filing of its plea of non est factum, its demurrer, answer, and cross-action, the Miami Butterine Company expressly waived its plea to the jurisdiction. In *Harper* v. *Tennessee Chemical Co., 37 Ga. App.* 433 (4) (140 S. E. 408), that court held that where a defendant files a demurrer, plea, answer, or other defense, at the first term, so as to prevent the case from being subject to a judgment of "in default," the defendant is restricted, at a subsequent term, to the defense made at the first term, "with such aid only as can be derived from proper amendments thereto," citing *Quillian* v. *Johnson*, supra. In *Brooke* v. *Lowry National Bank, 141 Ga.* 493, 497 (81 S. E. 223), this court said: "The legislative purpose in recent enactments looked toward prompter pleading at the first term, not toward delays by successive presentations of new defenses at later terms, as old ones failed and were stricken. The parties were in the midst of a trial at the second term of the case, and had announced ready. The demurrer had been overruled and the other pleadings of the defendant stricken. To have allowed an answer to the merits of the case would probably have required a continuance in order for the plaintiff to have met the new defense. Such is not the contemplation of the statutes." Such ruling, however, does not apply to the general demurrer, which may be filed at any time. *Richmond & Danville R. Co.* v. *Mitchell, 95 Ga.* 78 (22 S. E. 124) ; *Kelly* v. *Strouse,* 116 *Ga.* 872 (43 S. E. 280) ; *Macon & Birmingham. Ry. Co.* v. *Walton,* 121 *Ga.* 275 (48 S. E. 940) ; *Henderson* v. *State,* 123 *Ga.* 465, 466 (51 S. E. 385) ; *Cooney.* v. *Sweat,* 133 *Ga.* 511 (2) (66 S. E. 257, 25 L. R. A. (N. S.) 758).

It is submitted that there is nothing illogical in holding that although when the defendant files no defensive pleading, and the case has not been adjudged in default, he may at a subsequent term file

a demurrer or answer, nevertheless he can not do so if at the appearance term he filed some special plea, or even a demurrer. In the first instance, he has not made any defense, and his right to do so has not been forfeited by the entry of default. In the second instance, he has filed a defense, and thus has prevented the case from being marked in default. He thereby elected to stand on what he had filed. There was no reason why he could not have filed the demurrers, answer, and cross-action contemporaneously with the filing of his plea to the jurisdiction, without destroying the effect of the latter. *Western & Atlantic R. Co.* v. *Pitts,* 79 *Ga.* 532 (4 S. E. 921); *Stallings* v. *Stallings,* 127 *Ga.* 464, 471 (56 S. E. 469, 9 L. R. A. (N. S.) 593); *McFarland* v. *McFarland,* 151 *Ga.* 9, 10 (3) (105 S. E. 596); *Piggly-Wiggly Georgia Co.* v. *May Investing Corporation,* 189 *Ga.* 477 (6 S. E. 2d, 579). The law looks forward to a time when there shall be an end to the filing of additional defenses. In this kind of warfare, the fight should not be opened with a mere line of skirmishes, but a belligerent should begin the action by ordering to the front his entire strength, horse, foot and dragoon. Successive assaults, at different times, on various portions of the field, is not, generally speaking, the order of battle. The unlimbering of the heavy artillery, if any there be, should not be delayed until the conflict is far advanced. It follows that the court erred in refusing to strike the Miami Butterine Company's special demurrers, plea of non est factum, answer, and cross-action, on the ground that they were filed too late.

■ While the writing attached to the petition as an exhibit purports to bind the Miami Butterine Company to make F. & F. Company Inc. and its assigns exclusive distributor of its products, and quotes prices therefor, one may look in vain for any promise of F. & F. Company Inc. that it will purchase or distribute any of such products. It does agree "to stand all costs of distribution, advertising, and promotion," etc., and "agrees not to act as wholesale distributor for any other brand of margarine during the life of this agreement;" but this is a far cry from any obligation on its part to accept from the other party any specified amount of its products, or to sell or distribute the same. In *Huggins* v. *Southeastern Lime & Cement Co.,* 121 *Ga.* 311 (48 S. E. 933), the writing contained a recital that "Messrs. J. H. Huggins & Son agree, in accepting the agency of the Leghigh Portland Cement, to

push the sale of same exclusively as their Portland, not purchasing any other brand while the contract is in effect;" and yet this court held that the agreement was clearly unilateral, because there was nothing in it which amounted to an obligation on the part of Huggins to purchase cement in any stated or otherwise definite quantity. See *Pepsi-Cola Co.* v. *Wright,* 187 *Ga.* 723 (2 S. E. 2d, 73), and cit. The contract was lacking in mutuality, and therefore was unenforceable.

■ The result is not altered from the fact that the writing contains a recital, "that for and in consideration of the sum of one ($1.00) dollar exchanged between the parties," etc. Here we do not even have "the fictitious dollar of the law," for there is no statement that a dollar was ever paid or promised, as was the case in *Southern Bell Telephone &c. Co.* v. *Harris,* 117 *Ga.* 1001 (44 S. E. 885), but merely that a dollar was exchanged between the parties, with the purpose, no doubt, of supposing that this would give color to the transaction. Before there can be a consideration in money which the law will recognize, the party must either part with money or promise to do so; and a mere swapping of dollars will not suffice. When a dollar is handed from one to the other, and the same dollar or another one is returned in its stead, this is an exchange of dollars, but in reality nobody has paid anything or promised to do so. And this is all that the recital in this agreement means. Justice is sometimes represented as being blind; but the law is able to see through such a subterfuge as this, and to denominate it, as it is, "airy nothingness," so far as furnishing any consideration for the agreement.

■ The action should have been dismissed on general demurrer. All subsequent rulings in the case were nugatory.

*Judgment reversed on the main bill of exceptions; affirmed in part and reversed in part on the cross-bill. All the Justices concur.*