FONTAINE *v.* BAXLEY, BOLES & Co., and *vice versa.*

1. After part performance to the extent of going to New York and opening business, mutuality is not wanting in a contract which stipulates that one party shall go to that city and there open and conduct a business on his own account for the sale of a commodity not an article of general commerce, and that the other party shall furnish and deliver to him at a specified price so much of the commodity, not exceeding a given quantity monthly, as he (the proprietor of the new business) shall pre-engage to his customers during the period of one year, the mode of conducting the new business contemplated being that the proprietor of that business is to discover purchasers, make binding contracts with them, and then order and receive enough of the commodity from the other party to fill such contracts.

2. In consequence of provisions of the code, §§3261, 2909, set-off and recoupment are substantially alike and do not differ in their effects on the result of the suit. For this reason, matter which is technically proper for one of these defences may be pleaded as the other, and when so pleaded, may be proved by evidence competent to support either form of plea. Though the plea as one of recoupment was defective in wanting allegations identifying the contract sued on as a part of the contract described in the plea and the breach of which by the plaintiff is alleged, to the defendant's damage, yet as the court sustained the plea, and the

matter of it would under the code be good as a plea of set-off, the judgment sustaining it will not be reversed. Its defects as a plea of recoupment are amendable, and it can be amended at any time.

3. The code, §2950, declares that "Any necessary expense which one of two contracting parties incurs in complying with the contract may be recovered as damages." When this applies in behalf of a defendant, a plea which alleges the breach of a contract by the plaintiff, sets out that the defendant incurred expenses in performing on his part, and alleges specific facts from which it is fairly inferable that some or all of the expenses were necessarily incurred, is good in substance; but when demurred to specially for failure to itemize the expenses, it should be amended so as to give the plaintiff reasonable notice of the substantial particulars constituting such claim.

4. Where performance of a contract by the defendant was to be at his own expense, he cannot recoup or set off against the plaintiff both the expenses incurred and full damages otherwise sustained on account of the breach complained of. Where both matters are pleaded, the defendant should be required to elect between them at or before the trial.

5. The damages suffered in consequence of breaking up pending overtures and negotiations for pre-engaging the commodity at the time notice was given by the party who undertook to make delivery that no further deliveries would be made, are not speculative nor too remote, provided it be shown by evidence that certain contracts pre-engaging the commodity would, if not thus broken up, have been made and complied with, and that the difference between cost and net proceeds in each case would have been a fixed sum.

6. On the facts in evidence, the defendant below, plaintiff in error here, was chargeable with the disputed item as to storage.

August 27, 1892.

Contract. Damage. Set-off. Recoupment. Pleading and practice. Before Judge Willis. City court of Columbus. October term, 1891.

Baxley, Boles & Co. sued Fontaine for a balance claimed to be due on an account for cross-ties, including a charge of $232.50 for storage on ties in Brunswick. The defendant's first plea, besides that of the general issue, sets up that in so far as the ties were delivered they were delivered in pursuance of a special contract between the plaintiffs and himself, whereby the

v 90-27

plaintiffs agreed to furnish him, delivered free on board ship at Brunswick, 50,000 ties of a certain description, all to be delivered between September, 1889, and July, 1890, for which the defendant agreed to pay a certain price sixty days after delivery of each ship-load free on board at Brunswick, less ten per cent. of such amount, which it was agreed the defendant should retain as guarantee of the fulfillment of the contract, to be paid the plaintiffs only after full completion of the contract; that in pursuance of the contract the plaintiffs did deliver to him f. o. b. at Brunswick a certain number of ties; that from time to time, at the special request of the plaintiffs and as an accommodation to them, he made advance payments on account of the several shipments before the same were due and payable; that in order to do this it became necessary for him to borrow from bank at interest, upon faith of the several cargoes, the amounts so respectively paid, and also to insure said cargoes, all of which was well known to the plaintiffs who, in consideration of such advance payments, agreed to repay him the amounts so by him paid on account of interest and insurance (the amounts of the advances, interest and insurance being itemized); and that of the gross number of ties shipped, 729 were rejected in New York according to the contract, and on these the defendant had paid freight from Brunswick, which payment the plaintiffs became and were liable to repay; wherefore he pleads as a set-off, against the amount for which he became liable for the accepted ties, the amounts paid by him for insurance and for freight on the rejected ties, as well as the total of the advance payments and interest. In his second plea he denies that he is indebted to the plaintiffs on account of storage of ties in Brunswick.

The third plea alleges as follows: On or about March 10, 1889, the defendant entered into a contract with

the plaintiffs, whereby they agreed to furnish him with such number of cross-ties as might be necessary to fill any contract he might thereafter make for supplying ties to railroad companies, not to exceed fifty thousand ties a month, for a period of twelve months after he should have closed his first contract with such railroad companies, which ties were to be of certain stated dimensions and for certain prices. All were to be delivered as called for, free on board ship at Brunswick, subject to New York inspection. At the time of this contract he notified the plaintiffs that he desired to enter into it for the purpose of submitting bids to, and entering into contracts with, eastern railroad companies to supply them with cross-ties, that such was the business he proposed to undertake and carry on, and that he would call for the ties to be delivered according to contract as he might be required to deliver them to the railroad companies with which he should contract; all of which was specially brought to the knowledge of, and well understood by, the plaintiffs. In consideration of the obligations assumed by them, he agreed to go to New York and negotiate the sale of ties to the railroad companies centering there, and thus secure contracts for the furnishing of ties, all of which should be supplied by the plaintiffs at the prices and upon the terms named. They were solicitous to have him undertake the business, since by reason of his acquaintanceship and influential connections they anticipated that he would be successful and thus open a market for their production. Relying upon the faith of said contract he went, in the summer of 1889, to New York where he opened an office for the sale of ties, and labored earnestly, ardently and successfully to establish his business, to which end he spent four months or more in New York at an expense of $1,500 or other large sum. He was constantly in communication with

the plaintiffs, who knew that he was expending much labor, time and money in consideration and upon the faith of his contract with them. Relying upon the same he submitted bids for furnishing ties to the following railroad companies at the prices stated :

N. Y. C. and H. R. R. R. 50,000 at 55 cts.
Cent. of N. J.................... 50,000 " 58 "
D., L. & West. R. R......... 30,000 " 62 "
N. Y., L. E. & W. R. R..... 50,000 " 53 "
N. Y., Ont. & W. R. R..... 50,000 " 49 "

The bids to the first two above named were each accepted, and contracts therefor awarded to defendant. The contract with the N. Y. C. & H. R. R. R. has been fully performed and executed. He was assured by officials of the last three named companies that his bids were the lowest and best that had been submitted, and that the same would be accepted and the contract awarded him at the proper time. He also made bids to the Pa. R. R. for 50,000 ties, to the N. Y. & Northeastern for 30,000 ties, to the West Shore for 50,000 ties, and the Rhode Island R. R. for 30,000 ties, all of which bids, if accepted, would have yielded him large profits, and some of which would have been accepted had not he been compelled to withdraw all bids because of the breach of contract by the plaintiffs as hereinafter specified. While all of the above bids were pending (except that to the N. Y. C. & H. R. R. R., which had been accepted) he was informed by the plaintiffs on or about October 19, 1889, that they would be compelled to decline to supply ties any longer at the prices agreed upon, since they could make arrangements that would pay them much better. He immediately and earnestly protested, and demanded that plaintiffs should comply with the contract, informing them that their failure to do so would entail severe losses upon him. Without positively stating whether or not they would

continue to furnish ties at the prices named, they replied that they would try to arrange matters satisfactorily.   For some months affairs continued in this uncertain and indefinite state, the plaintiffs continually feeding him upon the delusive phantom of hope, until finally they positively and absolutely refused to perform and abide by their contract; in consequence whereof he was compelled to withdraw all bids pending as above stated, greatly to his damage.   By this breach he was also rendered unable to comply with his bids to the Cent. R. R. of N. J., which had been accepted and the contract awarded him.   By reason of all of which he was ruined in his business, lost credit with his associates and those with whom he had undertaken contracts, and was deprived of divers great gains and profits that otherwise he would have received.   He assigns special damages from this breach of contract by the plaintiffs, in that (1) he had submitted a bid to the D. L. &. W. R. R. to furnish 30,000 ties, which bid he was assured would be accepted, which ties the plaintiffs by their contract agreed to furnish at $35\frac{1}{2}$ cents each, the freight on which from Brunswick to New York was $22\frac{1}{2}$ cents each, thus rendering the cost of each tie delivered in New York 58 cents, leaving a profit of four cents per tie, or $1,200; (2) that he had submitted to the N. Y., L. E. & Western R. R. a bid for 50,000 ties at 53 cents, which bid he was assured would have been accepted, which ties the plaintiffs had agreed to furnish at $29\frac{1}{2}$ cents each, and the cost of transportation would have been 16 cents each, thus rendering the cost to him on each tie delivered in New York $45\frac{1}{2}$ cents, leaving a net profit of $7\frac{1}{2}$ cents, or $3,750; and (3) that he had submitted to the N. Y., Ont. & Western a bid to furnish 50,000 ties at 49 cents, which the plaintiffs had agreed to furnish at $29\frac{1}{2}$ cents each, and the cost of transportation from Brunswick to New York would have been 16

cents each, so that the cost to him would have been 45½
cents for each tie delivered in New York, leaving a net
profit of 3½ cents or $1,750.  Pending all these trans-
actions he was in constant communication with the
plaintiffs, they all the while knowing that he relied upon
his contract with them in order to comply with the con-
tracts he was soliciting; during all this time the plain-
tiffs encouraged him to submit bids and solicit contracts;
and after he had done so at large expense to himself,
and had obtained contracts and assurances of contracts
that would have yielded him large profits, it would be
a fraud upon him to permit the plaintiffs to violate their
contract as they have done.  The business he had estab-
lished at such pains and expense and which promised
to be so remunerative was completely ruined, and his
credit entirely destroyed, solely because of the unlawful
breach of contract on the part of plaintiffs as above set
out.  Wherefore he has been damaged $10,000, and
prays that he may be allowed to recoup the same
against plaintiffs' claim in the suit, and that he may
have judgment therefor.

To this third plea the plaintiffs demurred generally,
and especially because (1) the defendant seeks to re-
cover upon a contract certain speculative damages which
are set forth as prospective profits, and are too remote
to be the basis of an action or cross-action; (2) he
seeks to recover $1,500 as an expense in New York,
without setting out an itemized account of said ex-
penses, and said expense of $1,500 is not an element
of damage under a contract to deliver a merchantable
article; and (3) he does not set forth a binding, legal
contract between himself and the plaintiffs.  This de-
murrer was overruled, which ruling is the foundation
of the plaintiffs' cross-bill of exceptions.

By amendment the defendant pleaded:  In consid-
eration of his undertakings and agreements as set out

in his original plea, the undertakings and promises of the plaintiffs as therein set out were made; such mutual undertakings formed the consideration of said agreement; and in good faith he has performed his undertakings and agreements, and in consequence thereof has suffered inconvenience, loss and injury, and has been subject to charges and obligations. The obligation and contract referred to, by the terms of which the plaintiffs undertook and agreed to furnish him with the ties specified at the prices named, was in writing, or some note or memorandum thereof was in writing, signed by the plaintiffs. Said contract was broken by them with a knowledge and for the purpose of depriving the defendant of such benefits as are specified in the last paragraph of section 3073 of the code.

There was a verdict for the plaintiffs, and a motion for a new trial was overruled, to which the defendant excepted. The motion complains of the following rulings: A written contract dated September 12, 1889, between the plaintiffs and the defendant, was exhibited to witnesses and its execution proved, but it was not formally introduced in evidence. It provided that the plaintiffs should deliver free on board at Brunswick, subject to New York inspection by the agent of the New York Central & Hudson River Railroad Company, 50,000 ties, delivery to be made by the month, and all delivery to be made prior to February, 1890, according to certain specifications therein contained, all ties not conforming to such specifications being rejected by the inspector, to be removed by the plaintiffs, after deducting the cost of freight on the same, the defendant to retain ten per cent. of the purchase price on all ties by way of liquidated damages in the event of a failure by the plaintiffs to perform the contract; that for all ties so delivered free on board at Brunswick defendant should pay the plaintiffs 32½ cents each within thirty

days after each month's delivery in New York; and
that "free on board vessel means that vessels must load
themselves, but all wharf charges are to be paid by"
the plaintiffs. After having overruled the demurrer to
the defendant's plea of recoupment, the court refused
to permit the defendant to prove the original general
verbal contract and the entire transaction out of which
he contended the written contract above mentioned
grew, or to show that this written contract was but a
part of the original general contract, and was made in
pursuance and under the terms of the same. The court
further ruled that under the pleadings the defendant
could recoup his damages only for breach by the plain-
tiffs of this written contract (no breach of which was
alleged), and that he could not recoup damages for a
breach of the original general contract set up in the
plea, in pursuance of which it was therein alleged the
written contract was made. The court also refused to
permit the defendant to prove that there was a verbal
contract entered into between the parties in March,
1889, which was the original general contract in pursu-
ance of which the contract for the furnishing of the
ties sued upon was made; and that the contract sued
upon was nothing but a subcontract carrying out the
original contract "on their part," and was a perform-
ance on both sides, to that extent, of the original con-
tract. The defendant did not claim that the plaintiffs
violated the written contract. And after the case had
gone to the jury but before a verdict was received, the
defendant moved that the court open the case to permit
him to show the entire transaction out of which the
written contract grew, and to offer evidence to sustain
his plea of recoupment for breach of the original con-
tract, which motion was made upon the ground that the
plaintiffs had sued upon general account for goods sold
and delivered, and had not declared upon any special

contract in writing to supply ties for the New York Central & Hudson River Railroad Company; and the motion was overruled.

After the rulings above set forth, and the introduction of all the evidence offered, the parties agreed upon the number and value of the cross-ties delivered, and by consent the court submitted to the jury only two questions: (1) As to the amount of insurance which the plaintiffs should pay; and (2) as to whether the defendant was liable for storage as claimed. Both these issues were found by the jury in favor of the plaintiffs. The motion for a new trial alleges that the verdict is contrary to the evidence, without evidence to support it, and decidedly and strongly against the weight of the evidence; and further, that it is contrary to law and the principles of justice and equity.

LITTLE & WIMBISH, for Fontaine.

PEABODY, BRANNON & HATCHER, contra.

BLECKLEY, Chief Justice.

The facts are stated in the official report.

1. One of the objections urged to the third plea was the want of mutuality in the contract which that plea sets up and alleges. Grant that this objection would have been good if any question as to its binding force had arisen upon the contract before either party had partly performed it, yet after Fontaine had in pursuance of the agreement gone to New York and opened there the contemplated business, he had performed so far that it would be a fraud in the other party to repudiate the contract. This would satisfy the requisites both of mutuality and of the statute of frauds, as that statute stands expressed in the code, §§1950, 1951. If the other party had desired to renounce the agreement and throw it off, notice to this effect should have been given to Fontaine before he had incurred trouble and expense in complying with it on his part. The cases are num-

erous in which a mere proposition may be withdrawn
before it is acted upon to the hurt of another, but can-
not be withdrawn afterwards. Reducing this agree-
ment to the rank of such a case as that, there would be
no want of mutuality after Fontaine went to New York
and opened business. And if this would serve to bind
the other party to supply and deliver to Fontaine such
cross-ties as he might sell in conducting his business,
Fontaine would be equally bound to order and receive
the whole of them from this particular party, to the ex-
clusion of all others. While he did not expressly
promise to do so, such was the fair import of the agree-
ment, according to its tenor and spirit. There can be
no doubt that the terms of such an agreement would
raise a just expectation on the part of him who engaged
to supply and deliver as many cross-ties as the other
might need, that the latter would order and receive from
him all he needed. It must be remembered, in behalf
of both these contracting parties, that cross-ties are not
a commodity of general commerce; that they are neither
to be procured at all times in the market by one wishing
to buy them, nor to be disposed of readily and quickly
by one wishing to sell them. On the contrary, demand
must prearrange for supply, and supply before becoming
abundant must prearrange for demand. Here was a
mutual arrangement by which certainty of supply was
sought to be secured on the one hand, and certainty of
demand on the other. The measure of both was to be
one and the same, to wit, the quantity (not exceeding so
many in each month) which Fontaine could succeed in
pre-engaging to his customers within the period of one
year. Such an arrangement was, in its nature, calcu-
lated to be mutually beneficial; one of the parties un-
dertaking to make or find a market for this non-com-
mercial or extra-commercial article, to the extent of his
ability, and the other undertaking to supply it up to a

given limit. We think the objection of the want of mutuality was not well taken.

2. Another objection to the same plea was, that it sought to recoup damages for the breach by the plaintiffs of their stipulations in the contract alleged, when the action was in no wise based on that contract, but purported to be simply an action for the price of cross-ties sold and delivered. As a mere technical point this objection seems well founded, but if the ties sued for were actually sold and delivered in pursuance of the general contract set forth in the plea, the plea can be made sound as one of recoupment by amendment, and it can be amended at any time. The difference between recoupment and set-off is no longer of much importance. By section 3261 all claims *ex contractu* may be joined, and the defendant may set up as a defence all claims of the same nature with the plaintiff's demand. Section 2909 defines recoupment, and the next section distinguishes it from set-off. The scheme of the code is to recoup where both parties rely on the same contract, and set off where they urge different contracts. But in as much as unliquidated damages resulting from breaches of contract may be set off the same as liquidated damages, there is no longer any substantial difference between recoupment and set-off which requires to be noticed in pleading. Of what importance is it that a plea misnames a defence, if it clearly appears that the defence is good, or would be good if rightly named? Correctly denominating defences is matter of form only. Here the plea was upheld by the court below, and to reverse the judgment because the damages were not pleaded as set-off, but as recoupment, would be over-technical. What has such a trifle to do with justice? The defence ought to prevail and would prevail if established by evidence competent to sustain either sort of plea.

3. Two objections made to the same plea, in so far as

it seeks to recover expenses incurred by Fontaine in performing the contract on his part, were, first, that the expenses were not recoverable at all; and, secondly, that the plea fails to set forth an itemized account of the same. "Any necessary expense which one of two contracting parties incurs in complying with the contract may be recovered as damages." Code, §2950. This answers the first objection, or would do so were these damages all that the plea sought to recover. So treating it for the present, we can hold that it is good in substance. But as it was demurred to specially for failure to specify in detail the items of expense, we also hold that in that respect it is defective, and that it should be amended so as to give the adverse party reasonable notice of the substantial items or particulars constituting the claim. The spirit of our system of pleading requires each party to set forth his demand fully, plainly and distinctly, so that it may be met and controverted in open light and not groped after and grappled with in the dark. We shall see presently that in order to have his expenses allowed him even after the plea is amended, Fontaine must abandon his claim to other items of damage which the plea seeks to recover.

4. It is manifest that, according to the terms of the contract alleged in the plea, Fontaine was to establish and conduct business in New York at his own expense. This being so, he could not charge the other party with the expense thus incurred, and also with the full damages otherwise sustained on account of the breach or breaches of contract alleged. To entitle him to the latter damages, his expenses should be treated as an investment made by himself in the business out of which his profits in trade were to come. It would be absurd to allow him these profits on the business which he had secured, and at the same time reimburse him for the

cost of establishing the business or for the cost of conducting it.   He must abandon damages of the one class or those of the other, the two orders of damages being incompatible elements of one and the same measure of compensation.   If expenses are to be recovered, profits are not, and *vice versa*.   He must elect before or at the trial which class of damage he will go for, and the best mode of electing would be to strike from the plea any and all claim to the class he renounces.

5.  The objection to the plea that damages claimed on account of lost or defeated profits are speculative and too remote, is not well taken in so far as the plea squares with the description and conditions laid down in the fifth head-note.   It may be difficult to support the plea by evidence, but should it be done, there will be no obstacle to a recovery for want of certainty or proximateness in these damages.   The contract alleged fixed the price which Fontaine was to pay, and the difference between that and the prices which he would have received would accurately measure his loss in each instance, making, of course, any proper deduction for freights, etc.

6.  We have examined the evidence carefully touching the disputed item in the plaintiffs' account for storage, and think the verdict as to that was correct.   Fontaine was fairly chargeable with it.

We hold, however, that the contract set up in the third plea was provable by parol evidence, and that the court erred in ruling to the contrary.   In arriving at this conclusion we have to disregard the amendment to that plea, which seems to allege that the contract or some memorandum of it, signed by the plaintiffs, was in writing.   This we do because the amendment was evidently abandoned.   It should have been stricken in so far as these allegations are concerned.   We are aware that we somewhat strain the case on this point of practice in order to do justice, but we deem this allowable.

The cross-bill of exceptions complains only of the judgment overruling the demurrer to the third plea, the plea which has been in view under all the preceding heads of this opinion. That judgment is affirmed, with direction that the plea be so amended touching the claim for expenses incurred by the defendant, Fontaine, in New York, as to give the plaintiffs reasonable information of the substantial particulars constituting the claim.

*Judgment reversed. On cross-bill, affirmed with direction.*