13166.   SOUTHERN RAILWAY COMPANY *v.* CATHEY.

That the alleged contract was not in writing, or that it was unilateral, was not a sufficient ground for demurrer to this action, in which the plaintiff sought to recover the price of cross-ties alleged to have been cut by him and placed on the right of way of the defendant's railroad in accordance with the contract. The allegations were sufficient to show acceptance of the cross-ties on the part of the defendant. The court did not err in overruling the demurrer.

DECIDED APRIL 26, 1922.

Complaint; from city court of Floyd County — Judge Nunnally. December 8, 1921.

Application for certiorari was denied by the Supreme Court.

*C. I. Carey, Hamilton & Hamilton, Maddox, McCamy & Shumate,* for plaintiff in error, cited: 21 *Ga. App.* 81; 2 *Ga. App.* 213; 141 *Ga.* 119; 119 *Ga.* 6; 7 *Ga. App.* 276; 116 *Ga.* 1; 8 *Ga. App.* 447; 9 *Ga. App.* 718 (distinguished); 2 *Ga. App.* 776 (distinguished).

*Lamar Camp, L. A. Dean,* contra, cited:  Civil Code (1910), § 3223, par. 3; 9 *Ga. App.* 718; 16 *Ga. App.* 314; 21 *Ga. App.* 81; Id. 160; 2 *Ga. App.* 776; 141 *Ga.* 119 (distinguished); 2 *Ga. App.* 213 (distinguished); 1 *Ga. App.* 63; 24 *Ga. App.* 504 (3); 102 *Ga.* 533; 90 *Ga.* 416.

HILL, J. This was a suit to recover the price of a lot of cross-ties alleged to have been sold to the defendant. A demurrer to the petition was overruled, and the case was brought to this court for review. The petition alleged, in substance, the following facts: Some time during the month of April, 1920, plaintiff contracted with Mr. Gordon Teat, section foreman of the defendant railway company at Six-Mile Station, in Floyd county, Georgia, to deliver to said railway company 150 railroad cross-ties of hardwood, at the

price of $1.40 per tie. According to the instructions of said Teat, the petitioner cut and placed on the right of way of the railway company the ties ordered. L. A. Oglesby, tie-inspector of the railway company, accepted the ties placed by the petitioner on the right of way, and at the time of acceptance instructed petitioner to place as many more of like quality as petitioner could cut, and told him that the railway company would pay him at the rate of $1.40 per tie. According to the instructions of this inspector the petitioner placed 203 more ties of the kind and quality first ordered and accepted by the railway company, which ties the said railway company now refuses to accept in accordance with the terms of its contract. The demurrer was based on the following grounds: (1) It appears from the allegations of the petition that the cross-ties tendered under the contract alleged were never accepted by the defendant. (2) The contract sued on is void for uncertainty, no specified number of ties to be furnished being agreed on. (3) The contract sued on is unilateral, the plaintiff not having bound himself to deliver any ties. (4) The contract sued on was not in writing and the goods contracted for exceeded in value the sum of $50.

We think the court properly overruled the demurrer. The objections made by the demurrer, that the alleged contract was unilateral and not in writing, are fully answered by the allegations that there was such a performance of the contract by the plaintiff as would render it a fraud on the part of the defendant to refuse to pay for the ties. "Where there has been such a part performance of the contract as would render it a fraud of the party refusing to comply, if the court did not compel a performance," the contract is within the exception of the statute of frauds set forth in the Civil Code of 1910, § 3223, paragraph 3. As to the objection that there was no acceptance of the ties, this court holds that the delivery of the ties according to the terms of the contract, on the right of way, in compliance with the instructions of the defendant, amounted to an acceptance of the ties on the part of the railway company. In the case of *Mimms* v. *Betts Co.,* 9 *Ga. App.* 718 (72 S. E. 271), the court said: "Even if it can be said, as it probably can, that in the beginning the contract was indefinite, or lacked mutuality by reason of the fact that the plaintiff did not undertake to furnish any specific number of teams, but was only to furnish

such as he might be able to purchase, still the contract became enforceable and mutually binding when the number of teams which the plaintiff might be able to furnish was duly ascertained by his procurement of five teams and by his putting them to work for the defendant under the contract, and by the defendant's accepting them as satisfying the terms of the contract." It is true that the facts here alleged may not show a positive, direct acceptance of the cross-ties, but they do show that 203 cross-ties were cut by the plaintiff in compliance with the contract, and all of these cross-ties placed upon the right of way where the petitioner alleges he was instructed to place them. The plaintiff did all that he could in the performance of his contract, and the law should compel the defendant to do what it ought to do, in view of that fact, so as to not subject the plaintiff to loss by reason of his compliance with his contract in reliance upon the terms specifically stated by the defendant corporation. In the case of *Wholesale Mercantile Co.* v. *Jackson, 2 Ga. App.* 776 (59 S. E. 106), it was held: "If goods of exactly the quantity and quality bargained for were delivered according to the terms of the contract, it became absolutely immaterial whether the agent who received them had or did not have the right to accept them. Acceptance followed necessarily on the impossibility of rejecting the goods contracted for, and to decline to take them would have been a fraud." "And where the terms of the sale are agreed upon and the bargain struck, and everything that the seller has to do with the goods is completed, the contract of sale becomes absolute and the property rests in the buyer." *Good Roads Machinery Co.* v. *Neal, 21 Ga. App.* 161 (93 S. E. 1018). Chief Justice Bleckley, in the case of *Fontaine* v. *Baxley, 90 Ga.* 416 (17 S. E. 1015), seems to have covered the points now being discussed in his usual forcible way: "One of the objections urged to the third plea was the want of mutuality in the contract which that plea sets up and alleges. Grant that this objection would have been good if any question as to its binding force had arisen upon the contract before either party had partly performed it, yet after Fontaine had in pursuance of the agreement gone to New York and opened there the contemplated business, he had performed so far that it would be a fraud in the other party to repudiate the contract. This would satisfy the requisites both of mutuality and of the statute of

frauds." The cases cited by counsel for plaintiff in error in their brief are easily distinguishable on the facts from the cases here cited, which we think are controlling.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*