1. Where a defendant files at the appearance term of the court a plea to the jurisdiction and a traverse of service, and not until the second or trial term files a plea of non est factum, a special demurrer, answer, and cross-action, in each of which pleadings it is recited that the defendant waives the plea to the jurisdiction theretofore filed, it is error for the court to overrule a motion of the plaintiff to strike such pleadings filed at the second term, on the ground that they were filed too late.
2. It was not error to overrule the motion so far as it related to the general demurrer, since that demurrer may be filed at any time.
3. The contract relied upon by the plaintiff as a basis of his suit was unilateral, since, although it purported to bind one party to furnish, it did not purport to bind the other party to accept any of the products referred to therein.
4. A recital, "for and in consideration of the sum of one dollar exchanged between the parties," does not show a payment or a promise to pay, and therefore furnishes no consideration known to the law.
5. Since it was erroneous to refuse to dismiss the action on general demurrer, all subsequent steps in the case were nugatory.
 Nos. 13198, 13223. April 9, 1940.
L. Frankel, alleging himself to be the assignee of a contract between his assignor, F. F. Company Inc., and Miami Butterine Company, filed a petition against Miami Butterine Company, a non-resident of the State, Georgia Egg Poultry Company Inc., and L. H. Coy, both residents of Fulton County, where the suit was filed. He alleged, that by the terms of the contract F. F. Company and its assigns were made the sole distributor of all the products of Miami Butterine Company in the named territory in *Page 89 
Georgia; that the three defendants were conspiring to breach this contract and to substitute, as such distributor, the other two defendants, and made detailed and extensive allegations setting forth the defendants' acts and doings as constituting such alleged conspiracy, as a result of which conduct of the defendants he had suffered damages, and that unless the defendants were immediately enjoined he would suffer irreparable damage. He prayed that the defendants be restrained and enjoined from soliciting orders for such products, and/or selling or delivering to any person, firm, or corporation within the territory designated, except through petitioner; that the property of the Butterine Company in this State be seized by attachment and a receiver be appointed to take charge of and hold the same pending final adjudication and determination of this cause of action; that he have judgment against the defendants and each of them, for damages sustained by him because of their alleged acts and conduct; and for general relief. Attached to the petition was a copy of the contract which it was alleged the defendants were conspiring to breach, as follows:
"Georgia, Fulton County. This contract, entered into between Miami Butterine Company, of Cincinnati, . . . . . . . . County, Ohio, hereinafter referred to as party of the first part, and the F. F. Company Inc., of Atlanta, Fulton County, Georgia, hereinafter referred to as party of the second part, witnesseth:
"1. That for and in consideration of the sum of one ($1.00) dollar exchanged between the parties, party of the first part does appoint party of the second part or its assigns its sole distributor of all of its products and/or brands of margarine manufactured by it and sold within the State of Georgia.
"2. Said party of the second part shall be the exclusive agent and distributor for the entire State of Georgia, with the exception of the City of Augusta proper, and such territory as is now covered by the City Wholesale Company of Griffin, Georgia.
"3. This contract shall be for a term of five (5) years, with an option on the part of party of the second part to renew it for like periods from time to time hereafter, and may be ended prior to that time only by written consent of both parties.
"4. Said party of the second part agrees not to act as wholesale distributor for any other brand of margarine during the life of this agreement. *Page 90 
"5. Said party of the second part agrees to stand all costs of distribution, advertising, and promotion in the area above mentioned, except that said party of the first part shall from time to time furnish said party of the second part such printed matter and advertising copy as they do or may have available.
"6. It being agreed between the parties hereto at the undersigned date that the price quoted party of the second part by party of the first part is eleven and three-quarters (11-3/4) cents per pound, or approximately one and three-quarters (1-3/4) cents below the present price quoted on the Chicago market for this type of product, or at the option of party of the first part the ratio of 1-3/4 cents below jobbers price in the Southern territory (said Southern territory being States south of the southern boundaries of Tenn. and N.C. State lines). Party of the second part shall have the option of determining from books of party of the first part such quotations; and that should the general market price of margarine decline, a margin upon the same ratio as above stated to the party of the second part shall be allowed by party of the first part from time to time. Should the price increase, a sufficient reasonable notice to enable party of the second part to make preparations in order to cover itself against said increase shall be given to party of the second part by party of the first part. Said coverage shall not exceed two weeks normal supply.
"This contract executed in duplicate this . . . . day of May, 1935. "F. F. Co., Louis Frankel (L. S.) "The Miami Butterine Co. (L. S.) Per C. K. Heidrich, Pres. "L. H. Coy, Witness."
The action was made returnable to the November term, 1936. The Georgia Egg Poultry Company filed answers at the appearance term, and Miami Butterine Company filed at that term its plea to the jurisdiction and a traverse of service, but no answer. But at the second term, waiving its plea to the jurisdiction, the Miami Butterine Company filed general and special demurrers, a plea of non est factum, and its answer and cross-action. The demurrers were overruled. The plaintiff filed a motion to strike the demurrers, the plea of non est factum, and the answer and cross-action, on the ground that they were filed too late. This motion was overruled. Exceptions pendente lite to these orders were filed by the plaintiff and the Miami Butterine Company, and error is *Page 91 
assigned thereon in the bills of exceptions. Miami Butterine Company is the sole plaintiff in error in the main bill, in which it assigns error also on several other rulings and on the final judgment.
1, 2. The first question for consideration relates to the court's overruling of a motion by the plaintiff to strike the demurrers, plea of non est factum, answer and cross-action of the Miami Butterine Company, filed on February 17, 1937, on the ground that they were too late. The action was returnable to the November term, 1936, and the demurrers, general and special, plea, answer and cross-action were not filed at that term, but at the next succeeding term. "All demurrers and pleas shall be filed at the first term." Code, § 81-301. "In all cases demurrer, pleas, and answer shall be disposed of in the order named, and all demurrers and pleas shall be determined at the first term, unless continued by the court or by consent of parties." § 81-1002. There being no demurrer, plea of non est factum, answer, or cross-action filed at the first term, the determination of such pleadings could not be "continued" by the court beyond that term. The Code, § 110-401, declares: "In all cases, the judge at each term shall call the appearance docket upon some day previously fixed or on the last day of the term, and upon such call all cases in which the defendant has not filed a demurrer, plea, answer, or other defense shall be marked `in default' on the docket." It is true that this court in construing this last quoted section has held: "Where the case has never been marked `in default' on the docket, nor any order taken declaring the case to be `in default,' it is error to dismiss an answer to the merits of the cause, filed at a term subsequent to the appearance term, because not filed in time." Hall v.Tiedeman, 141 Ga. 602 (81 S.E. 868); McKenzie Co. v.Consolidated Lumber Co., 142 Ga. 375 (82 S.E. 1062). CompareGlass v. Allen, 141 Ga. 30 (80 S.E. 284); Hodnett v.Stewart, 131 Ga. 67 (2), 68 (61 S.E. 1124); Gordon v.Hudson, 120 Ga. 698 (48 S.E. 131); Clifton v. Fiveash,122 Ga. 383 (50 S.E. 134); Albany Pine Products Co. v.Hercules Mfg. Co., 123 Ga. 270. (51 S.E. 297). But those cases differ on their facts from the instant case, in that in the cases just referred to and quoted from no defense of any kind was filed at the appearance term, whereas in the case now before us the *Page 92 
Miami Butterine Company did file at the appearance term a plea to the jurisdiction and a traverse of service; and such a plea must be construed as a form of defense, and comes within the meaning of the words "or other defense" contained in the Code section last quoted; so that while it was still pending and not passed on and stricken by the court, the judge could not, even if moved so to do by plaintiff or his counsel, mark the case as "in default" on the docket. Consequently those decisions of this court which authorize a defendant to file an answer at the second term where the case has not been marked "in default" are not applicable here. Nor is the ruling in Davis v. South Carolina GeorgiaRailroad Co., 107 Ga. 420 (33 S.E. 437), controlling in this case, since in the Davis case, a consent order was taken at the appearance term, setting the demurrer for a hearing at the trial term. And in Gordon v. Hudson, 120 Ga. 698 (48 S.E. 131), a "numerously-signed" petition was presented to the judge before the appearance term, requesting him not to hold court at that term, and giving the reasons for such request; whereupon the court passed an order allowing the defendants sixty days from the date of his order, in which to file answers, defenses, demurrers, and other pleas required by law to be filed at that term.
In Chambless v. Livingston, 123 Ga. 257 (51 S.E. 314), while the defendant filed at the appearance term his general denial of the plaintiff's allegations, which was demurred to on the ground that it did not answer the allegations of the petition paragraph by paragraph, and did not fully and distinctly set forth any defense, and the plaintiff prayed that said plea and answer be stricken, it appears from the record in that case that the plaintiff's demurrer and motion to strike was not called to the court's attention until after the defendant had filed his amendment to his answer at the second term, in which he met the plaintiff's demurrer. In Quillian v. Johnson, 122 Ga. 49
(3) (49 S.E. 801), this court held: "Notwithstanding a defendant may file a plea in abatement at the first term, he can not, by way of amendment to the plea at the trial term, set up new and distinct grounds why the action should abate, unless the plaintiff has so amended his pleadings as for the first time to make available the matters of defense sought to be urged by an amendment to the defendant's plea." In Maddox v. Central ofGeorgia Ry. Co., 110 Ga. 301 (2) (34 S.E. 1036), nothing to the *Page 93 
contrary was ruled. The plea to the merits was there allowed to be filed, not only after the defendant's plea in abatement had been overruled, but after the plaintiff had amended his suit by substituting "The Central of Georgia Railway Company" for "The Central Railroad and Banking Company of Georgia" wherever the latter appeared in the petition and process. In the instant case the answer filed at the second term of the court can not be considered in any sense as an amendment to the only plea filed at the first term, to wit, a plea to the jurisdiction and a traverse of service. Besides, contemporaneously with the filing of its plea of non est factum, its demurrer, answer, and cross-action, the Miami Butterine Company expressly waived its plea to the jurisdiction. In Harper v. Tennessee Chemical Co., 37 Ga. App. 433
(4) (140 S.E. 408), that court held that where a defendant files a demurrer, plea, answer, or other defense, at the first term, so as to prevent the case from being subject to a judgment of "in default," the defendant is restricted, at a subsequent term, to the defense made at the first term, "with such aid only as can be derived from proper amendments thereto," citing Quillian v. Johnson, supra. In Brooke v. LowryNational Bank, 141 Ga. 493, 497 (81 S.E. 223), this court said: "The legislative purpose in recent enactments looked toward prompter pleading at the first term, not toward delays by successive presentations of new defenses at later terms, as old ones failed and were stricken. The parties were in the midst of a trial at the second term of the case, and had announced ready. The demurrer had been overruled and the other pleadings of the defendant stricken. To have allowed an answer to the merits of the case would probably have required a continuance in order for the plaintiff to have met the new defense. Such is not the contemplation of the statutes." Such ruling, however, does not apply to the general demurrer, which may be filed at any time.Richmond Danville R. Co. v. Mitchell, 95 Ga. 78
(22 S.E. 124); Kelly v. Strouse, 116 Ga. 872 (43 S.E. 280); Macon Birmingham Ry. Co. v. Walton, 121 Ga. 275 (48 S.E. 940);Henderson v. State, 123 Ga. 465, 466 (51 S.E. 385);Cooney v. Sweat, 133 Ga. 511 (2) (66 S.E. 257, 25 L.R.A. (N.S.) 758).
It is submitted that there is nothing illogical in holding that although when the defendant files no defensive pleading, and the case has not been adjudged in default, he may at a subsequent term file *Page 94 
a demurrer or answer, nevertheless he can not do so if at the appearance term he filed some special plea, or even a demurrer. In the first instance, he has not made any defense, and his right to do so has not been forfeited by the entry of default. In the second instance, he has filed a defense, and thus has prevented the case from being marked in default. He thereby elected to stand on what he had filed. There was no reason why he could not have filed the demurrers, answer, and cross-action contemporaneously with the filing of his plea to the jurisdiction, without destroying the effect of the latter.Western Atlantic R. Co. v. Pitts, 79 Ga. 532
(4 S.E. 921); Stallings v. Stallings, 127 Ga. 464, 471
(56 S.E. 469, 9 L.R.A. (N.S.) 593); McFarland v. McFarland,151 Ga. 9, 10 (3) (105 S.E. 596); Piggly-Wiggly Georgia Co. v.May Investing Corporation, 189 Ga. 477 (6 S.E.2d 579). The law looks forward to a time when there shall be an end to the filing of additional defenses. In this kind of warfare, the fight should not be opened with a mere line of skirmishes, but a belligerent should begin the action by ordering to the front his entire strength, horse, foot and dragoon. Successive assaults, at different times, on various portions of the field, is not, generally speaking, the order of battle. The unlimbering of the heavy artillery, if any there be, should not be delayed until the conflict is far advanced. It follows that the court erred in refusing to strike the Miami Butterine Company's special demurrers, plea of non est factum, answer, and cross-action, on the ground that they were filed too late.
3. While the writing attached to the petition as an exhibit purports to bind the Miami Butterine Company to make F. F. Company Inc. and its assigns exclusive distributor of its products, and quotes prices therefor, one may look in vain for any promise of F. F. Company Inc. that it will purchase or distribute any of such products. It does agree "to stand all costs of distribution, advertising, and promotion," etc., and "agrees not to act as wholesale distributor for any other brand of margarine during the life of this agreement;" but this is a far cry from any obligation on its part to accept from the other party any specified amount of its products, or to sell or distribute the same. In Huggins v. Southeastern Lime CementCo., 121 Ga. 311 (48 S.E. 933), the writing contained a recital that "Messrs. J. H. Huggins Son agree, in accepting the agency of the Leghigh Portland Cement, to *Page 95 
push the sale of same exclusively as their Portland, not purchasing any other brand while the contract is in effect;" and yet this court held that the agreement was clearly unilateral, because there was nothing in it which amounted to an obligation on the part of Huggins to purchase cement in any stated or otherwise definite quantity. See Pepsi-Cola Co. v. Wright,187 Ga. 723 (2 S.E.2d 73), and cit. The contract was lacking in mutuality, and therefore was unenforceable.
4. The result is not altered from the fact that the writing contains a recital, "that for and in consideration of the sum of one ($1.00) dollar exchanged between the parties," etc. Here we do not even have "the fictitious dollar of the law," for there is no statement that a dollar was ever paid or promised, as was the case in Southern Bell Telephone c. Co. v. Harris, 117 Ga. 1001
(44 S.E. 885), but merely that a dollar was exchanged between the parties, with the purpose, no doubt, of supposing that this would give color to the transaction. Before there can be a consideration in money which the law will recognize, the party must either part with money or promise to do so; and a mere swapping of dollars will not suffice. When a dollar is handed from one to the other, and the same dollar or another one is returned in its stead, this is an exchange of dollars, but in reality nobody has paid anything or promised to do so. And this is all that the recital in this agreement means. Justice is sometimes represented as being blind; but the law is able to see through such a subterfuge as this, and to denominate it, as it is, "airy nothingness," so far as furnishing any consideration for the agreement.
5. The action should have been dismissed on general demurrer. All subsequent rulings in the case were nugatory.
Judgment reversed on the main bill of exceptions; affirmed inpart and reversed in part on the cross-bill. All the Justicesconcur.