38731, 38765.   SEALTEST SOUTHERN DAIRIES
DIVISION v. EVANS; and *vice versa.*

DECIDED MAY 16, 1961—REHEARING DENIED JUNE 13, 1961.

*Henry A. Stewart, Hurt, Gaines, Baird, Peek & Peabody, J. Corbett Peek, Jr.,* for plaintiff in error.

*Marson G. Dunaway, John E. Dougherty,* contra.

BELL, Judge. ■ The major issue to be decided is whether or not the defendant's cross-action praying for damages by reason of the alleged breach by the plaintiff of the contracts to supply milk imposes liability upon the plaintiff for the "reasonable market value of said business at the time of the breach." While the plaintiff did not demur to the defendant's cross-action, we do not feel that it is necessary to do so if the measure of damages sought to be recovered is not the one legally allowable. *Edelson v. Hendon,* 77 Ga. App. 395 (48 S. E. 2d 705). Here the plaintiff contracted, at first orally and then later in writing, to supply such milk as the defendant should require. One contract provided, "Distributor hereby agrees to sell to and subdistributor hereby agrees to purchase from distributor all milk which subdistributor shall require in connection with his business of selling and distributing milk in the Cartersville milk shed." The same provisions appeared in the other three contracts relating to milk sheds in Atlanta, Rome, and Tallapoosa. The plaintiff contends these contracts were unilateral, since no agreed quantity was to be purchased. With this contention we agree. The contract here relied upon by the defendant as the basis of his cross-action for damages was unilateral since, although it purported to bind one party to furnish, it did not bind the other party to purchase any stated or otherwise definite quantity of milk. *Miami Butterine Co. v. Frankel,* 190 Ga. 88 (3), 94, 95 (8 S. E. 2d 398); *Pepsi-Cola Co. v. Wright,* 187 Ga. 723 (2 S. E. 2d 73). The fact that quantities from time to time were bought by the defendant from the plaintiff does not convert this contract into a bilateral obligation in the future,

since such purchases would not obligate the defendant to the purchase of any definite quantities in the future. The cases cited by the defendant do not control nor compel another result, since they all deal with different factual situations or with questions as to the action ability of past performances under contracts. Here, as to the past performance, an action would lie, but not for a breach as to the future performance, since in this case there was no binding obligation upon the defendant for future purchases. This ruling disposes of the third ground of error assigned in the cross-bill of exceptions to the effect that the court erred in instructing the jury that the defendant's right to recover on the cross-action was limited to a six months period.

■ While the contract was unilateral and, therefore, unenforceable as to future performances, the plaintiff clearly is entitled to recover for deliveries made under the contract prior to the plaintiff's refusal to make future deliveries. Allegedly, this refusal to make future deliveries was occasioned by the defendant's failure to pay for the prior deliveries. The written contract did not specify the terms of the sales except that they would be at prices and upon terms as established by orders of the Milk Commission of the State of Georgia. The defendant's testimony was that he customarily paid by a check "which was actually supposed to be the next day, I think it was actually one day behind all the way." He admitted that the milk delivered one day was billed the next day and he would pay for it the next day. He admitted being behind with his payments and that he occasionally got several days behind in 1958, and that he got "way behind" with his payments somewhere in July, August and September of 1958; that it had run to a rather large amount; that he did not recall the exact amount. His testimony was vague about the amount owing. The only payment he made after the plaintiff ceased to deliver was in September in the sum of $457.40, also identified as $478.83. He admitted executing a note in September, 1958, for $2,748.50 in favor of the plaintiff.

The plaintiff's witness, its office manager, testified that the defendant was indebted for purchase of products in the sum of

$2,740.48, no part of which had been paid, of which $2,100.53 was for milk, $167.05 was for the dairy bar account, and $473.10 was for payments due on vending machines.

The defendant's testimony did not contradict the undisputed evidence of indebtedness on the supply contracts which the plaintiff's testimony showed was owing. However, the defendant testified that plaintiff "picked up" the vending machines "with the understanding that the amount that was owed in the past would be completely forgotten, since I had so much in the machines. . ." This the plaintiff denied and thus raised a jury issue as to the amount claimed by the plaintiff as payment on the vending machines. In the record there was some evidence of dispute as to credits owing for the return of the machines rented, which would warrant submission of the issue to the jury. Accordingly, the motion for judgment notwithstanding the verdict was properly denied by the trial court.

■ At the close of the evidence of the plaintiff, the defendant moved to strike all the evidence with reference to the indebtedness under the contract for the sale of vending machines on the ground that it was irrelevant and immaterial, and that the evidence introduced two separate and distinct causes of action in the written contract, which is foreign to the action on the open account. There was also a motion made to strike the evidence as to certain ice cream products sold. Also, at the close of all the evidence the defendant moved to strike count 3 of the petition which was added by amendment during the course of trial, on the ground that it contained two causes of action, one on an open account for milk products, and one on a note. While the count as amended was duplicitous (*Harris v. Wilcox,* 7 Ga. App. 121, 66 S. E. 380; *Gainesville & Dahlonega Electric Ry. Co. v. Austin,* 122 Ga. 823 (1), 50 S. E. 983), duplicity in a petition is attacked by special demurrer (*Grant v. Hart,* 192 Ga. 153, 155 (4), 14 S. E. 2d 860), and where the plaintiff in error did not file a special demurrer attacking the duplicity, the defect in form was waived. *Braswell v. Hodges,* 95 Ga. App. 231, 232 (2b) (97 S. E. 2d 588). The court thus properly overruled the defendant's motion to strike count 3.

The other grounds of error are either without merit or were abandoned.

Since there was some conflict in the evidence as to certain credits which should have been given by the plaintiff against the otherwise admitted indebtedness of the defendant to the plaintiff, the motion for a directed verdict and the motion for judgment notwithstanding the verdict were properly overruled by the trial court. Since the law and the evidence would not justify the verdict in favor of the defendant against the plaintiff, the trial court erred in overruling the plaintiff's motion for a new trial.

*The judgment is reversed on the main bill of exceptions, and is affirmed on the cross-bill of exceptions. Felton, C. J., and Nichols, J., concur.*

ON MOTION FOR REHEARING.

BELL, Judge. On motion for rehearing, the defendant strongly contends that the case of *Crawford v. Baker,* 207 Ga. 56 (60 S. E. 2d 146), compels a different holding from that rendered here. We do not agree.

In the *Crawford* case the Supreme Court held that even though the plaintiff was under no obligation under the contract to sell petroleum products to the defendant, the plaintiff had furnished other considerations which had been received and accepted by the defendant, and the contract was, therefore, based upon a valid and valuable consideration and was not invalid as being unilateral and without mutuality. The *Crawford* case is clearly distinguishable from this. There are no "other" considerations present here.

The contract involved in this action is within the rule of *Morrow v. Southern Express Co.,* 101 Ga. 810 (28 S. E. 998), where the plaintiff alleged that the defendant had assumed the obligation of a contract between the plaintiff and a third party to receive and carry all the milk and butter which the plaintiff would offer for shipment and to return the containers. The agreement had been carried on for a number of years until the defendant's refusal to receive further shipments. In holding the contract to be unilateral and unenforceable for lack of mutuality, the Supreme Court said, "It is true it is alleged that the railroad promised to receive and carry all the milk and butter which the plaintiff would offer for shipment at a given

point . . . but the plaintiff did not undertake or bind himself to make any such shipments at the time the promise of the railroad was made; and if we treat the promise of the railroad as conditional on the furnishing of such shipments, yet, notwithstanding it is alleged the plaintiff did offer and the railroad or express company received such shipments for a number of years, it is obvious that the doing of these acts on the part of the plaintiff did not bind him to any future performance . . . The plaintiff never became bound by any promise, nor did he do any such act as would supply the promise. The contract was not mutual and binding at its inception, nor did it subsequently become so."

The decision here is that the contract was executed as to past performances, but was unenforceable as to future performances, for lack of mutuality. We adhere to it.

There is still another reason why the defendant's cross-action cannot prevail. The defendant's own testimony shows that he defaulted in the terms of payment; that under the contract he was to pay the next day for the previous day's deliveries; that he became "way behind" with his payments; and that this default had run to a large amount. Under decisions of the Supreme Court, this default gave the plaintiff the right to discontinue further shipments. "If the defendants were entitled to be furnished goods at certain times under the contract, they were under a correlative duty to pay for them in accordance with the contract, and their failure to do so gave the plaintiffs a right to discontinue the shipping of goods. The defendants can not be allowed to violate their part of the contract by a failure to make payments when due, and then hold the plaintiffs for damages because of failure to ship additional goods thereafter." *Armuchee Mfg. Co. v. Juilliard & Co.*, 14 Ga. App. 141, 145 (80 S. E. 525); *Savannah Ice-Delivery Co. v. American Refrigerator Transit Co.*, 110 Ga. 142 (35 S. E. 280).

*The motion for rehearing is denied.*